**WESTERN GROUP NURSERIES, INC., an Arizona corporation, Plaintiff–Appellee,**

v.

**Alan J. POMERANZ; Estate of Alan C. Jacobsen; Larry P. Blinder; Bernard R. O'Donnell; R. James Nicholson; Gordon L. Cox; and Vaughn & Potter 84 Trees, Ltd., Defendants–Appellants.**

Nos. 91CA1626, 91CA1978.

Colorado Court of Appeals, Div. V.

April 22, 1993.

Rehearing Denied June 10, 1993.

Certiorari Denied Feb. 7, 1994.

Berenbaum & Weinshenk, P.C., Martin D. Buckley, Denver, Treon, Strick, Lucia & Aguirre, Anthony R. Lucia, Phoenix, AR, for plaintiff-appellee.

David L. Honeck, Englewood, for defendants-appellants Alan J. Pomeranz, Estate of Alan C. Jacobsen, Larry P. Blinder and Bernard R. O'Donnell.

McKenna & Cuneo, I. Thomas Bieging, Stephen B. Shapiro, Denver, for defendant-appellant R. James Nicholson.

Robert Lynn New, Denver, Beigel & Sandler, Leigh R. Lasky, Diane J. Kliebard, Chicago, IL, for defendants-appellants Gordon L. Cox and Vaughn & Potter 84 Trees, Ltd.

Opinion by Judge METZGER.

Defendants, Alan J. Pomeranz, Estate of Alan C. Jacobson, Larry P. Blinder, Bernard R. O'Donnell, R. James Nicholson, Gordon L. Cox, and Vaughn & Potter 84 Trees, Ltd. (Colorado limited partners), appeal from the summary judgment entered in favor of plaintiff, Western Group Nurseries, Inc. (Western Group). We affirm.

This case involves a two-step transaction for the sale of nursery stock and other assets. In the first part of the transaction, Western United Nurseries, Inc. (Western United) sold nursery stock and other assets to World Nurseries, Inc. (World) for $22.1 million. The purchase price was payable as follows: $3 million in cash upon closing, a non-recourse promissory note of approximately $17 million, and the balance of $2.1 million to be paid out of the ongoing sale of certain nursery assets.

In the second part of the transaction, which occurred virtually contemporaneously with the closing on the first sale, World sold the assets to Arizona World Nurseries Limited Partnership (Arizona World) for approximately $33 million. The purchase price was payable as follows: $6.5 million payable in cash upon closing and a promissory note (the wraparound note) of $26.5 million. The wraparound note provided that each limited partner of Arizona World "shall be personally liable to the extent of $260,000 per unit of limited partnership interest. . . ." It did not contain any restrictions on the right to sue the limited partners personally.

The non-recourse note given by World to Western United in the first transaction was secured by various assets pursuant to a security agreement (the World Security Agreement). The World Security Agreement granted Western United a security interest in World's rights in the nursery assets and the wraparound note.

The World Security Agreement also provided in pertinent part:

> To secure the timely payment of the Purchase Price ... [World] shall, and hereby does, grant, convey, assign, pledge and transfer to [Western United], a purchase money security interest in and to the [Nursery Assets] and the wraparound note except that *[Western United] shall not have the right to sue the Limited Partners or General Partners of [Arizona World] personally* thereon other than to the extent of payments made to them by [Arizona World] ... and agrees that such security agreement attaches upon the Closing of the Purchase Agreement. (emphasis added)

A supplemental agreement which actually pre-dated the World Security Agreement provided that the World Security Agreement:

> [W]ill be amended ... to make clear that upon occurrence of an event of default under the Security Agreement, [Western United] shall only have the right to proceed against the limited partners of the maker [Arizona World] of the wraparound note (as defined in the Security Agreement) for cash distributions made to them which are not made from cash flow ... from sales of nursery stock and other plant materials in the ordinary course of business or from payments received on sale made pursuant to Sections 15 of the Purchase Agreement.

World then assigned and transferred the partnership agreement and wraparound note to Western United.

In February 1986, World defaulted on its obligations to Western United. Western United filed an action in Arizona against World and Arizona World, seeking to recover sums due under the wraparound note. The court granted Western United's motion for partial summary judgment, allowing it to foreclose its security interest in the wraparound note. The judgment also allowed Western United to request a Writ of Special Execution directing the sheriff to conduct a foreclosure sale of all the collateral described in the World Security Agreement.

Pursuant to the Writ of Special Execution, the Arizona sheriff took possession of the wraparound note and scheduled a sale for December 2, 1986.

On December 1, 1986, Western Group was formed. It was comprised of shareholders of Western United and its affiliates. The president of Western Group was also the president of Western United. Although Western United had requested the foreclosure sale, Western United did not purchase the interest of the judgment debtor (World) at the sale. Rather, Western Group purchased all of World's interest in the wraparound note at the foreclosure sale.

Western Group then filed suit against Arizona World and its limited partners in Arizona to enforce the wraparound note. The suit was dismissed without prejudice for lack of personal jurisdiction. Eventually in July 1989, the Arizona court accelerated the entire balance of the wraparound note and entered judgment in favor of Western Group and against Arizona World.

Western Group then sued the limited partners throughout the country for their purported *pro rata* liability on the wraparound note with differing degrees of success.

The existing action is a consolidation of the actions against the Colorado limited partners.

The Colorado limited partners each moved for summary judgment contending they had no liability to Western Group on the wraparound note. More specifically, the limited partners contended that under provisions of Article 3 of the Uniform Commercial Code (U.C.C.), the World Security Agreement and supplemental agreement restrict their liability.

Western Group filed a cross-motion for summary judgment contending that, under Article 9 of the U.C.C., it acquired World's interest and World had no restriction against suing the limited partners.

The trial court granted Western Group's motion for summary judgment finding that Article 9 of the U.C.C. governed this action and that, therefore, Western Group was not precluded from suing the limited partners.

The court then entered judgment in favor of Western Group.

## I.

■ The Colorado limited partners first contend that Western Group was collaterally estopped from bringing this action and that, therefore, the court erred in granting plaintiff's motion for summary judgment. We disagree.

■ Collateral estoppel bars re-litigation of issues if: (1) the issue is identical to an issue actually and necessarily adjudicated at a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Denver v. Block 173 Associates,* 814 P.2d 824 (Colo.1991).

■ However, collateral estoppel is an equitable doctrine and need not be applied in every case. Thus, collateral estoppel need not be applied when a judgment is inconsistent with another judgment. *See* Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281 (1965).

Here, it is true that the court in *Hauser v. Western Group Nurseries, Inc,* 767 F.Supp. 475 (S.D.N.Y.1991), addressed the same issue presently before this court and decided the issues in favor of the limited partners.

In *Hauser,* plaintiffs, a limited partner and a general partner of Arizona World, filed a declaratory judgment action against Western Group seeking a determination of their liability under the wraparound note. The issue presented was whether Western Group could enforce the wraparound note against the limited partners to the extent of each limited partner's *pro rata* liability. And, there, as here, plaintiffs contended that the unambiguous language of the World Security Agreement precluded Western Group from proceeding against them.

Western Group raised several of the same contentions that it now raises before this court and the court rejected them, granting plaintiffs' motion for summary judgment. In doing so, the court found, *inter alia,* that the language of the Security Agreement clearly and unambiguously indicated the parties' intent to insulate the limited partners from personal liability. The court also found that Western Group was not a holder of the wraparound note and that, even if it was, it could not be a holder in due course. Finally, the court found, Western Group took the wraparound note with actual notice of the limited partners' defenses to the enforcement thereof.

In *Western Group Nurseries, Inc. v. Henin,* (N.Y.Sup.Ct. Index No. 3623–90, March 22, 1991), however, a New York Court reached a totally contrary result from that reached in *Hauser,* and entered judgment against the limited partners and in favor of Western Group.

Given these inconsistent results and the differing judgments by at least two courts of competent jurisdiction, we conclude that the trial court did not err in refusing to grant defendants' motions for summary judgment based upon collateral estoppel.

## II.

■ Defendants next contend that the trial court erred in relying on Article 9 of the U.C.C. rather than on Article 3 of the U.C.C. in finding them personally liable under the wraparound note. We disagree.

Any transaction intended to create a security interest in personal property or fixtures, including instruments and general intangibles, is a security interest and is governed by Article 9 of the U.C.C. Section 4–9–102(1)(a), C.R.S. (1992 Repl.Vol. 2). *See Colorado Leasing Corp. v. Borquez,* 738 P.2d 377 (Colo.App.1986). Article 9 also applies to security interests created by contract, including pledge or assignment. Section 4–9–102(2), C.R.S. (1992 Repl.Vol. 2). A security interest is an interest in property which secures payment or performance of an obligation. Section 4–1–201(37), C.R.S. (1992 Repl.Vol. 2). Thus, the transfer of a note for security purposes is governed by Article 9. *See Colorado Leasing Corp. v. Borquez, supra.*

Section 4–9–504, C.R.S. (1992 Repl.Vol. 2) provides:

(1) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing ...

(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto.

Here, the World Security Agreement clearly expresses the parties' intent to create a security interest in the wraparound note in favor of Western United. In addition, the Arizona court ordered the wraparound note to be sold at a foreclosure sale. *See* § 4–9–501, C.R.S. (1992 Repl.Vol. 2). Thus, we perceive no error in the trial court's conclusion that the transactions created a security interest and that the provisions of Article 9 governed.

■ Nor did the trial court err in concluding that Western Group took the wraparound note free of the restriction against suing the limited partners. That restriction was a limitation on Western United, not on World. Under the plain language of § 4–9–504, the sale transferred all of World's rights in the wraparound note to Western Group and discharged Western United's security interest. Since the note did not restrict World from suing the limited partners, Western Group also was not restricted from suing them. Thus, the court did not err in granting Western Group's motion for summary judgment.

In reaching this conclusion, we reject defendants' contention that the court erred in not resolving this issue under Article 3 of the U.C.C.

While it is true that Article 3 governs the status of ownership and rights of persons in possession of negotiable instruments, it does not address the debtor's or creditor's interest in negotiable instruments acquired at foreclosure sales, nor does it address the effect of a foreclosure sale on the security interest.

Moreover, § 4–3–103, C.R.S. (1992 Repl. Vol. 2) (Official Comment 2) provides:

In the case of a negotiable instrument which is subject to ... article 9 because it

is used as collateral, the provisions of ... [Article 3] continue to be applicable except insofar as there may be conflicting provisions in the ... Secured Transactions Article.

Thus, the provisions of Article 9 govern and defendants' contentions to the contrary are without merit.

### III.

We also reject defendant Cox's contention that the issue of Western Group's fraud precluded the court from entering summary judgment.

■ Summary judgment is proper when the pleadings, depositions, answers to interrogatories, or admissions together with any affidavits, establish there is no genuine issue of material fact and the movant is entitled to judgment as matter of law. *See Peterson v. Halsted,* 829 P.2d 373 (Colo.1992).

■ Here, defendant Cox contends that the trial court erred in granting Western Group's motion for summary judgment because a genuine issue of material fact exists as to his affirmative defense of fraud. To support this contention, Cox submitted a New York trial court's opinion in a case similar to the one before us, in which other limited partners had sued Western Group. In that opinion, the New York court denied Western Group's motion to dismiss several of the limited partners' claims, including the limited partners' fraud claim. Cox argues that, since the limited partners' fraud claim survived the motion to dismiss in the New York case, a genuine issue of material fact exists here so as to preclude the entry of summary judgment.

Upon reviewing the record, we reject Cox's contention and conclude that the court did not err in granting Western Group's motion for summary judgment. The New York court's order involved different limited partners and, therefore, was insufficient to substantiate Cox's fraud claim asserted in the case before us.

Moreover, Cox failed to file any affidavits or introduce any evidence of Western Group's alleged fraud as it relates to the limited partners involved in this proceeding in its summary judgment submissions. *Cf. Goldman v. Union Bank & Trust,* 765 P.2d

638 (Colo.App.1988) (genuine issue precluding summary judgment must be raised by specific factual allegations showing actual controversy). Accordingly, summary judgment was proper.

### IV.

Finally, relying on the undisputed fact that the Colorado limited partners did not sign the note, defendant Nicholson contends that the trial court erred in concluding that privity of contract existed between him and Western Group on the wraparound note. However, Nicholson did not argue lack of privity of contract at trial, and accordingly, we decline to address it here. *See First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo. App.1990).

In light of these conclusions, we need not address defendants' remaining contentions.

The judgment is affirmed.

RULAND and BRIGGS, JJ., concur.