Shirley **FERRIS**, Plaintiff–Appellant,

v.

**BAKERY, CONFECTIONERY AND TOBACCO UNION, LOCAL 26,** Defendant–Appellee.

No. 92CA0751.

Colorado Court of Appeals, Div. V.

June 3, 1993.

Rehearing Denied July 29, 1993.

Certiorari Denied Jan. 31, 1994.

Valerie McNaughton, Denver, for plaintiff-appellant.

Brauer, Buescher, Valentine, Walter C. Brauer, II, Ellen M. Kelman, Denver, for defendant-appellee.

Opinion by Judge TAUBMAN.

Plaintiff, Shirley Ferris, appeals the summary judgment entered in favor of the defendant, Bakery Confectionery and Tobacco Union, Local 26 (the Union), on her various claims arising from alleged sexual harassment on the job and her subsequent discharge. We affirm in part, reverse in part, and remand for further proceedings.

Ferris alleged in her complaint that she had been employed as the Union's secretary between 1976 and 1988, during which time she alleged she was subject to a continuing series of unwanted sexual advances primarily by defendant Raymond Valdez, the Union president.

Following a suspension from her job in June 1988, Ferris' own union, Office and Professional Employees International Union, Local # 5 (OPEIU), filed a grievance on her behalf pursuant to a collective bargaining agreement then in effect. As a result of this grievance proceeding, Ferris ended her employment with the Union.

Shortly thereafter, OPEIU purported to settle the grievance by entering into a settlement with the Union providing for certain sick leave and vacation pay for Ferris and agreeing not to object to her receiving unemployment benefits. However, Ferris declared on the settlement agreement that she was not agreeing to it.

In August 1988, Ferris filed charges with the Colorado Civil Rights Commission alleging discrimination based upon age and sex. After investigation, the Civil Rights Commission found there was no probable cause to believe that the Union had violated the Colorado Anti–Discrimination Act.

Ferris filed a claim under the Workers' Compensation Act in November 1988, assert-

ing that she had been exposed to sexual and emotional abuse on the job and alleging that, as a result, she suffered from high blood pressure, emotional distress, and post traumatic stress syndrome. She settled her workers' compensation claim for $45,000 in November 1989.

In June 1990, Ferris filed a complaint against the Union and Valdez, asserting claims for (1) wrongful discharge, (2) promissory estoppel, (3) public policy wrongful discharge, (4) violation of the Colorado Anti–Discrimination Act, (5) outrageous conduct, and (6) violation of the Colorado Organized Crime Control Act (COCCA). The district court granted the Union's motion for summary judgment before Ferris' time to respond to it had expired. The court's order was entered without specific findings, apparently based on its agreement with the Union's arguments that Ferris' claims were preempted by the Colorado Workers' Compensation Act and/or the federal Labor Management Relations Act and that Ferris had voluntarily released all claims as a result of OPEIU's settlement of her grievance relating to her termination.

Ferris moved for reconsideration of the trial court's order, and upon reconsideration, the court affirmed its entry of summary judgment in favor of the Union. It held that judgment was proper "either because Worker's Compensation provides the sole remedy to the plaintiff or because when plaintiff's collective bargaining representative settled her grievance, all her claims for relief against the Union were merged in the settlement." Also, the district court certified its ruling as final pursuant to C.R.C.P. 54(b).

During the pendency of this appeal, a jury found in favor of Valdez on claims 4 and 5 of Ferris' complaint. The judgment entered on that jury verdict has now been appealed. Based upon the jury verdict, the Union asked that we dismiss this appeal on the basis of collateral estoppel or, alternatively, stay proceedings pending the resolution of the case against Valdez. In an earlier order, we denied this motion but allowed the Union to renew this argument in its brief on the merits.

## I. Summary Judgment

Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. A party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Churchey v. Adolph Coors Co., supra.* These principles apply all the more when, as here, the trial court grants a motion for summary judgment before the non-moving party's time to respond has expired.

Moreover, because the trial court entered only a cursory ruling in its decision, we shall consider both its reasons for granting summary judgment and additional grounds raised by the Union in its motion. *See Patel v. Thomas*, 793 P.2d 632 (Colo.App.1990).

## II. Workers' Compensation Act Exclusivity

Ferris first contends that the district court erred in concluding that the Workers' Compensation Act provides the sole remedy to her and dismissing her claims on that basis. We agree.

### A.

Plaintiff's first three claims for relief assert different theories of wrongful discharge. Those claims concern her discharge, rather than injuries sustained while she was performing services in the course of employment. Thus, they may be brought irrespective of the workers' compensation claim. *Hoffsetz v. Jefferson County School No. District R–1*, 757 P.2d 155 (Colo.App.1988) (workers' compensation does not preclude an award of damages for mental suffering caused by willful or wanton breach of contract); *Martin Marietta Corp. v. Lorenz*, 823

P.2d 100 (Colo.1992) (public policy wrongful discharge is cognizable claim).

### B.

■ We also conclude that Ferris' claims for violation of the Anti–Discrimination Act and for outrageous conduct are not, as a matter of law, barred because her exclusive remedy is through the Workers' Compensation Act.

The Workers' Compensation Act, § 8–40–101, et seq., C.R.S. (1992 Cum. Supp.) provides the exclusive remedy to a covered employee for injuries sustained while the employee is performing services arising out of and in the course of employment and which themselves are proximately caused by injury or occupational disease arising out of and in the course of employment. Section 8–41–301, C.R.S. (1992 Cum.Supp.).

Here, as in *Patel v. Thomas, supra,* the parties do not dispute, and we agree, that Ferris' position was covered by the Workers' Compensation Act and that, since the alleged sexual harassment of Ferris occurred during working hours on the premises of her employment, the injuries of which she complained were proximately caused by injuries suffered "in the course of" her employment. *Patel v. Thomas, supra.*

As in *Patel,* the question here is whether the evidence presented on the summary judgment motion showed that Ferris' injuries were not proximately caused by an injury or occupational disease "arising out of" employment. The answer to this question requires us to analyze whether there is a sufficient nexus between the employment and the injury. *See In re Question Submitted by U.S. Court of Appeals,* 759 P.2d 17 (Colo.1988).

To determine whether a sufficient nexus exists, our supreme court has divided intentional assaults into three categories: (1) those that have some inherent connection with the employment, such as disputes related to job duties or where work creates certain relations and conditions which result in the dispute; (2) those that are inherently private; and (3) those that are "neutral." *In re Question, supra.*

A neutral force, we have said, "is one which is blind or irrational in nature, having been applied against the employee solely because the employee happened to be at a particular place at a particular time." *Stamper v. Hiteshew,* 797 P.2d 784, 786 (Colo.App.1990).

Here, by alleging a series of acts of sexual harassment over a period of twelve years in her affidavit in support of reconsideration of the summary judgment order in favor of the Union, Ferris has presented evidence strongly supporting a finding that the Union's acts were specifically targeted at her and not neutral in nature. Moreover, as in *Patel,* the evidence implies that Valdez specifically chose Ferris as his victim, unlike the circumstances in *In re Question, supra,* where the plaintiff was the victim of a rape and where the parties agreed there was no private motivation for the attack. *See Patel v. Thomas, supra.*

Thus, as in *Stamper, supra,* there exists a genuine factual controversy regarding the requisite degree of job relatedness for workers' compensation coverage, and the trial court erred in dismissing plaintiff's claims on this ground.

### III. Settlement and Merger of Claims

Ferris also maintains that trial court erred in granting summary judgment on the ground that settlement of her grievance by the Union resulted in merger of all claims into the settlement agreement. We agree.

■ The doctrine of merger or claim preclusion prohibits parties from relitigating issues which were or could have been raised in a previously adjudicated claim, and applies only to final judgments, not to settlements. *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973). Thus, even if we assume the settlement here was authorized—a point Ferris disputes—it could not legally bar her litigation of different claims.

■ Additionally, there is a genuine issue of material fact as to whether Ferris in fact authorized the settlement of her grievances. The Union presented a copy of the settlement, which covered *all* claims, in support of its motion for summary judgment, but the

settlement contains a notation by Ferris, "I refused to sign this document." Under these circumstances, there is at the very least a genuine issue of fact as to whether Ferris approved of this settlement or authorized it in any way. Accordingly, the district court erred in granting summary judgment for the Union on this ground.

## IV. Federal Labor Law Preemption

The Union correctly notes that we may consider additional arguments it advances in support of the district court's grant of summary judgment. *See People v. Cerrone,* 780 P.2d 562 (Colo.App.1989).

The Union argues that Ferris' contract claims, the first three causes of action, are preempted by federal labor law, specifically § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1988). It asserts that Ferris' wrongful discharge claims should have been considered only under the collective bargaining agreement, which provided, among other things, that employment could be terminated only for "just cause" and established a grievance and arbitration procedure for resolution of disputes. Thus, the Union contends, Ferris was required to utilize this grievance and arbitration procedure for her sexual harassment complaints, and federal law preempts her wrongful discharge claims.

Section 301 of the Labor Management Relations Act, provides in part: "Suits for violation of contracts between an employer and the labor organization representing employees in an industry affecting commerce ... may be brought in any district court in the United States having jurisdiction of the parties...."

The Supreme Court has interpreted this provision to authorize federal courts to fashion a body of federal common law to address disputes arising out of labor contracts and to ensure national uniformity in this area. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). However, while the interest in uniformity may preempt a state law claim, "not every claim which tangentially involves an agreement is preempted." *Coulter v. Construction & General Laborers Union Local 320,*

107 Or.App. 522, 812 P.2d 850, 852 (1991). *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

More recently, the Supreme Court rejected the argument that because a plaintiff's claim was "inextricably intertwined" with a collective bargaining agreement, the plaintiff's state law claim was preempted. As the Court explained, "even if dispute resolution pursuant to a collective bargaining agreement on the one hand, and state law, on the other, would require addressing precisely this same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." *Lingle v. Norge Division, Magic Chef,* 486 U.S. 399, 408–10, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410, 420–421 (1988). We agree that whether there is preemption must be determined on a case by case analysis of whether resolution of the claim depends on the interpretation of the bargaining agreement. *See Coulter v. Construction & General Laborers Union Local 320, supra.*

■ Thus, as with the sexual harassment claims in *Coulter,* resolution of Ferris' wrongful discharge claims does not require interpretation of the collective bargaining agreement. Accordingly, Ferris wrongful discharge claims are not preempted by § 301 of the Labor Management Relations Act.

■ We also reject the Union's contention that Ferris was required to utilize the grievance/arbitration procedure provided for by the collective bargaining agreement. Since we have already rejected the Union's argument that resolution of Ferris' wrongful discharge claims depends on an interpretation of the collective bargaining agreement, it necessarily follows that Ferris was not required to employ the collective bargaining agreement's grievance/arbitration procedure.

We further reject the Union's contention that Ferris' exclusive remedies are the grievance/arbitration procedure and a hybrid § 301/duty of fair representation suit as contemplated in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Since the collective bargaining agreement is not the basis for the sexual harassment or wrongful

discharge claims, the federal labor law governing collective bargaining is not controlling.

■ Finally, to the extent that the third claim for relief is based upon retaliation against Ferris for filing a claim for workers' compensation, this case is governed by *Lingle v. Norge Division supra* and *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.App. 1989). If we assume that Ferris can otherwise allege a wrongful discharge public policy claim for relief under Colorado law, then such claim is not preempted by § 301 of the Labor Management Relations Act. *See Lingle, supra; Lathrop v. Entenmann's, Inc., supra*, at 1371 and 1372–1373 ("state claim based upon retaliation by employer against an employee who files a workers' compensation claim is not preempted by § 301" and "public policy requires recognition of a common law claim by an employee for wrongful discharge if the employee is discharged in retaliation for pursuing a workers' compensation claim").

### V. Wrongful Discharge Public Policy Claim

The Union advances several additional grounds to support the trial court's ruling with respect to Ferris' third claim for relief. We agree in part with the Union's contentions.

### A.

■ The third claim for relief, entitled wrongful discharge public policy, alleges that Ferris is protected from retaliation on the basis of work-related illness or injury or the filing of a claim for workers' compensation based on the Colorado public policy underlying the Workers' Compensation Act.

This claim further asserts that Ferris is protected from termination and retaliation by Colorado's public policy in favor of industrial peace and fair employment practices established by the Labor Peace Act and that defendant improperly discriminated against Ferris on the basis of her sex and age and by denying her the right to organize as protected by the Labor Peace Act.

First, the Union asserts that the complaint does not allege any fact relating to any effort "to organize under the Labor Peace Act." We agree, and thus, judgment was properly entered for the Union on this part of the third claim for relief.

■ Further, we agree with the Union that Ferris has not pleaded facts or presented any evidence on the summary judgment motion to support her claim that she was terminated in retaliation for her work-related illness and injury, especially since Ferris did not present evidence showing that the Union knew of her work related illness at the time she was terminated. *See Martin Marietta Corp. v. Lorenz, supra*. Thus, judgment for the Union with respect to this part of the third claim was proper as well.

### B.

The Union further maintains that judgment was properly entered for it on the third claim for relief because of a judicial admission made by Ferris' attorney in a brief supporting her motion for reconsideration in the district court. We disagree.

■ In that brief, plaintiff's counsel stated in part: "Plaintiff has based her action for civil remedies on the sexual assaults and harassment which she suffered at the hands of her supervisor Raymond Valdez.... This action relates solely to the actions of Raymond Valdez which constituted sexual harassment and the consequences of that harassment, including retaliation for her complaints about that behavior." This language, the Union contends, limits Ferris to litigating sexual harassment claims regarding Valdez and precludes any other claim, such as discrimination based upon age or violation of Colorado's public policy in favor of fair employment practices. However, we agree with Ferris that this statement in her attorney's brief was not a judicial admission, but simply the attorney's characterization of the essence of her legal arguments in this case.

A judicial admission "is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real

dispute." *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986). It is apparent that the quoted sentence is not a judicial admission. It includes not only the allegation of harassment by Valdez, but also the actions of the Union in retaliating against Ferris. This claim of retaliation by the Union is the thrust of Ferris' third claim for relief.

### C.

The Union further asserts that the trial court properly ruled in its favor on that part of the third claim relating to the Labor Peace Act and to sex or age discrimination on the ground that the applicable statutes in those areas contain their own remedies, and thus, it is inappropriate to create a wrongful discharge/public policy claim for relief in these circumstances. We agree in part.

■ The Colorado Anti–Discrimination Act, § 24–34–301, et seq., C.R.S. (1982 Repl. Vol. 10), creates a comprehensive remedial scheme to deal with unlawful discrimination in employment, including sexual harassment. Hence, we deem it unnecessary to find a wrongful discharge/public policy claim for relief based upon violation of the Colorado Anti–Discrimination Act. *See Gamble v. Levitz Furniture Co.,* 759 P.2d 761 (Colo. App.1988), *cert. dismissed,* 782 P.2d 1197 (1989).

■ However, we disagree with the Union that the Labor Peace Act contains a similarly comprehensive administrative scheme that would preclude the assertion of a wrongful discharge/public policy claim for relief. The Labor Peace Act itself allows for "the pursuit of equitable or legal relief in courts of competent jurisdiction" and does not require exhaustion of any available administrative remedies. *See* § 8–3–110(1), C.R.S. (1986 Repl.Vol. 3B). Thus, Ferris' wrongful discharge/public policy claim based upon Colorado's public policy in favor of industrial peace and fair employment practices under the Labor Peace Act may be asserted.

### VI. Election of Remedies

■ In support of the trial court's summary judgment ruling, the Union advances the argument that Ferris' workers' compensation settlement represents an election of remedies warranting dismissal of her fourth and fifth claims based upon violation of the Colorado Anti–Discrimination Act and outrageous conduct, respectively. We disagree.

The Union contends that, by pursuing and settling her claim for workers' compensation, Ferris acknowledged that the alleged sexual harassment was work related. Now, the Union maintains, Ferris wishes to keep her settlement and sue the Union on grounds that the sexual harassment was not work related.

We have already determined that whether Ferris' claims of sexual harassment "arose out of" her employment under the terms of the Workers' Compensation Act presents a factual dispute not properly resolvable by summary judgment. Thus, it remains to be determined whether her sexual harassment claims were work related. However, reaching a settlement on a workers' compensation claim does not preclude litigation of other causes of action arising out of the same circumstances. *See Varsity Amusement Co. v. Butters,* 155 Colo. 330, 394 P.2d 603 (1964) (settlement of tort claim does not preclude litigation of claim under the Workers' Compensation Act for same injury).

Moreover, amounts paid under a compensation settlement must be applied against any damages awarded in a related civil suit. *Popovich v. Irlando,* 811 P.2d 379 (Colo. 1991). Thus, there is no danger here that Ferris will be allowed in any way to receive a "double recovery" by virtue of being allowed to litigate other claims in addition to having received a settlement under the Workers' Compensation Act.

### VII. COCCA Claims

Plaintiff's sixth claim arises under § 18–17–102, C.R.S. (1986 Repl.Vol. 8B), the Colorado Organized Crime Control Act. Four prohibited activities are set forth under § 18–17–104, C.R.S. (1986 Repl.Vol. 8B). Ferris does not identify which claim she makes; however, a claim under any part of this statute must fail. Thus, we agree with the Union that the trial court properly entered judgment for it on this claim for relief.

■ Section 18–17–104(1)(a), C.R.S. (1986 Repl.Vol. 8B) makes it unlawful to receive proceeds from a pattern of racketeering and to invest such proceeds "in the establishment or operation of any enterprise." This is a money laundering provision. There is no allegation in the complaint that the Union received proceeds from a pattern of racketeering and then laundered this money. Therefore, the pleadings do not set forth sufficient allegations to establish a claim under § 18–17–104(1)(a).

Section 18–17–104(2), C.R.S. (1986 Repl. Vol. 8B) prohibits the knowing acquisition of any interest in or control of any enterprise. Again, the allegations in the complaint, if true, would not constitute a violation of this subsection. Ferris merely alleges that the Union's pattern of allegedly illegal activities was intended to deprive her of property or employment.

Section 18–17–104(3), C.R.S. (1986 Repl. Vol. 8B) prohibits any persons associated with any enterprise knowingly to participate in such enterprise through a pattern of racketeering activity. This subsection is modeled on 18 U.S.C. § 1962(c) (1988), which has been held to require that the "enterprise" and the "person" engaged in the racketeering activity be different entities, and "employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Board of County Commissioners v. Liberty Group,* 965 F.2d 879, 886 fn. 4 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 329, 121 L.Ed.2d 247 (1992) (ten of the eleven circuits which have addressed the issue have found that § 1962(c) requires that the "person" and the "enterprise" engaged in racketeering activities must be distinct).

■ Absent a prior interpretation by our state courts, federal case law construing the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq. (1988) is instructive because COCCA was modeled after the federal act. *See New Crawford Valley Ltd. v. Benedict,* 847 P.2d 642 (Colo. App.1992); *People v. Chaussee,* 847 P.2d 156 (Colo.App.1992). Therefore, we follow *Liberty Group, supra,* and conclude that the enterprise and the person cannot be the same entity for purposes of a COCCA violation. Since Valdez is an employee of the Union, the complaint does not sufficiently allege a violation of this subsection either.

Finally, § 18–17–104(4), C.R.S. (1986 Repl. Vol. 8B) deals with conspiracy, and there are no claims of conspiracy in the complaint.

Therefore, we affirm the trial court's judgment regarding the sixth claim for relief arising under COCCA.

## VIII.  Collateral Estoppel

■ The Union also contends that the fourth and fifth causes of action, alleging violation of the Colorado Anti–Discrimination Act and outrageous conduct, should now be dismissed based upon the collateral estoppel effect of the jury verdict in favor of Valdez. We disagree.

Collateral estoppel bars relitigation of an issue if: "(1) the issue is identical to an issue actually and necessarily adjudicated at a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *Western Group Nurseries, Inc. v. Pomeranz,* 867 P.2d 12, 15 (Colo.App.1993).

We note that an appeal, No. 92CA2097, has been filed from the jury verdict in favor of Valdez. That appeal is now pending before our court.

It is true, as the Union asserts, that collateral estoppel may apply in circumstances in which the prior proceeding is pending on appeal. *See Jefferson County School District No. R–1 v. Industrial Commission,* 698 P.2d 1350 (Colo.App.1984). Nevertheless, we find that collateral estoppel does not apply in this case because the issues are not identical to the issues actually and necessarily adjudicated against Valdez at the prior jury trial.

While it is certainly true that the alleged acts of sexual harassment by Valdez are a significant part of Ferris' claim against the Union, they are not co-extensive. The com-

plaint alleges wrongful conduct both by Valdez and other Union officials.

Thus, it is indeed possible that another jury might find the Union liable, even though the first jury, assuming it acted properly, found that Valdez was not liable for violation of the Colorado Anti–Discrimination Act or outrageous conduct. Accordingly, we conclude that principles of collateral estoppel do not require us to dismiss Ferris' fourth and fifth claims for relief.

### IX. Conclusion

Because of our disposition, we find it unnecessary to stay proceedings in this case pending the resolution of the appeal in the companion case against Valdez.

The judgment in favor of the Union is affirmed with respect to the COCCA claim for relief and parts of the wrongful discharge-public policy claim for relief, and is reversed with respect to the other claims for relief. The cause is remanded for further proceedings consistent with this opinion.

HUME and DAVIDSON, JJ., concur.