Gabriel ATSEPOYI, Plaintiff,

v.

TANDY CORPORATION, a Delaware Corporation, d/b/a Radio Shack, a Division of Tandy Corporation, Defendant.

No. Civ.A. 99–K–617.

United States District Court,
D. Colorado.

June 21, 1999.

Samuel J. Stoorman, Denver, CO, for plaintiff.

Daniel M. Statriana, Jr., Marianne E. Pierce, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction*

Plaintiff Gabriel Atsepoyi initiated this action against Defendant Tandy Corporation alleging employment discrimination, breach of contract, promissory estoppel, outrageous conduct, intentional and negli-gent infliction of emotional distress and failure to pay wages and/or compensation in violation of Colorado Revised Statutes § 8–4–1011 *et seq.* Defendant moves to dismiss Plaintiff's claims three through nine pursuant to Fed.R.Civ.P. 12(b)(6).

### II. *Background*

Atsepoyi is a citizen of Nigeria and a legal United States resident living in Colo-rado. He is also in a class protected under Title VII.

Atsepoyi began working for Tandy as a Manager–in–Training at Radio Shack on May 15, 1998. He claims Tandy promul-gated written and oral policies regarding the company's commitment to equal oppor-tunity employment and termination proce-dures. He alleges he relied on these state-ments and they formed the basis for his agreement to work for Tandy. Atsepoyi further contends Tandy should have ex-pected its employees to rely on the com-mitments found in materials such as em-ployee manuals.

According to Plaintiff, Tandy treated mi-nority workers less favorably than their white counterparts. He claims his co-workers subjected him to harassment, hu-miliation and racist conduct which Tandy either ignored or encouraged. In fact, Atsepoyi claims when he discussed his con-cerns with his superiors, they retaliated against him. For instance, he notes after he complained about his differential treat-ment, his employer revoked his previously approved leave of absence. Moreover, At-sepoyi claims his employer informed him he would be fired if he did not return to work during the time of his scheduled, prepaid trip to Nigeria.

Plaintiff alleges Defendant's outrageous conduct directly and proximately caused severe injury to his person. He therefore seeks compensation for the damages he incurred working for Tandy.

### III. *Applicable Standard For A Motion to Dismiss*

In ruling on a 12(b)(6) motion to dismiss, I must assume, as true, all factual allega-

tions and draw all reasonable inferences in favor of the pleader. *Johnson, II v. N.T.I., a Div. of Colo. Springs Circuits,* 898 F.Supp. 762, 763 (D.Colo.1995). I must construe the pleadings liberally and note dismissal is appropriate only when it appears plaintiff can prove no set of facts in support of the claims entitling him to relief. *Chemical Weapons Working Group. Inc. v. United States Dep't of the Army,* 111 F.3d 1485, 1490 (10th Cir.1997). Finally,

> [t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.... Granting defendant's motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

## IV. *Merits*

Tandy seeks to dismiss Atsepoyi's claims three through nine which include breach of contract, promissory estoppel, breach of a covenant of good faith, outrageous conduct, wrongful discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress. Tandy rightly asserts I should consolidate Atsepoyi's sixth claim for outrageous conduct and eighth claim for intentional infliction of emotional distress. Tandy is also correct in its assertion that I should dismiss the ninth claim. However, Tandy's arguments that Atsepoyi's remaining claims do not withstand a 12(b)(6) motion, fail. I deny Tandy's motion to dismiss Plaintiff's third, fourth, fifth, sixth and seventh claims.

### A. *Promissory Estoppel and Wrongful Discharge.*

Atsepoyi's fourth claim for relief is grounded in promissory estoppel and the seventh claim in wrongful discharge. Tandy argues these claims should be dismissed because Title VII of the Civil Rights Act, the basis for the first two claims, provides a remedy for the damages alleged in claims four and seven. (Def.'s Mot. Dismiss at 3.) Tandy asserts *Ferris v. Bakery, Confectionery and Tobacco Union, Local 26,* 867 P.2d 38 (Colo.App.1993) and *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo.App.1984) make it "clear that where a statute upon which a plaintiff seeks to base his claim provides a remedy to the employee for violation of that statute by the employer, a separate action for wrongful discharge will not be recognized." (Def.'s Mot. Dismiss at 3.) However, the facts in *Ferris* and *Corbin* are distinguishable from the case at hand, and it is *Visor v. Sprint/United Management Co.,* 965 F.Supp. 31 (D.Colo.1997) which states the pertinent law regarding these claims.

■ While neither *Ferris* nor *Corbin* specifically addresses the relationship between Title VII and state law claims, Visor explicitly holds, in an employment discrimination action, Title VII does not subsume or preempt a private employee's state law claims. *Id.* at 22. This is true even where the plaintiff bases such claims on the same facts he uses in his Title VII claim. *Id.* at 22. In *Visor,* I noted, "despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Id.* at 22. Similar to the plaintiffs in *Visor,* here, Atsepoyi was a private employee who is asserting claims against his former employer under Title VII and under state law. Thus, contrary to Tandy's assertions, the "subsumption doctrine" does not negate the Plaintiff's promissory estoppel or wrongful discharge claims. *See Id.* I therefore deny Tandy's request to dismiss claims four and seven.

### B. *Breach of the Covenant of Good Faith and Fair Dealing.*

Atsepoyi bases his fifth claim for relief on a breach of the covenant of good faith.

Tandy asserts I should dismiss this claim because Colorado courts have "expressly refused to recognize the existence of an implied covenant of good faith and fair dealing in employment relationships." (Def.'s Mot. Dismiss at 5.) Although Tandy cites cases such as *Pittman v. Larson Distrib. Co.,* 724 P.2d 1379 (Colo.App.1986) and *Farmer v. Central Bancorporation,* 761 P.2d 220 (Colo.App.1988), which support its argument, *Decker v. Browning–Ferris Industries of Colorado Inc.,* 947 P.2d 937, 939 (Colo.1997) recognized an implied breach of the covenant of good faith and fair dealing in the employment context.

Tandy bases its argument on the assertion that Atsepoyi does not allege he falls outside the at-will employment doctrine. (Def.'s Mot. Dismiss at 5.) However, it acknowledges, if Atsepoyi can prove he was employed other than at-will, i.e. under an express or implied employment contract, then such a covenant in an employment relationship may be implied. (*Id.* at 5.)

Atsepoyi does assert there was an express contract between himself and Tandy and bases his assertion on facts similar to those in *Decker.* In *Decker,* the Colorado Supreme Court articulated the type of situation which modifies the at-will employment doctrine and forms a binding contract between the employee and employer. Justice Martinez reasoned modifications of at-will employment can be described as implied-in-law and implied-in-fact. *Decker,* 947 P.2d at 939. An implied-in-fact contract term is "one that is inferred from the statements or conduct of the parties. The modification we recognize here could be characterized as implied-in-fact." *See Id.* Accordingly, *Marsh v. Delta Air Lines Inc.,* 952 F.Supp. 1458, 1464 (D.Colo.1997) held, under *Decker,* a claim alleging a breach of an express covenant of good faith and fair dealing is equivalent to a breach of contract claim. In other words, "[i]f an employer makes a promise to deal with an employee in a fair manner, and the em-

ployee gives the consideration of continued performance in response to this promise, and later the employer breaks its promise, then the employee has a cause of action for breach of contract." *Id.* at 1465.

Like the plaintiff in *Decker,* Atsepoyi rests his breach of contract claim on the employer's alleged violation of an express covenant of good faith and fair dealing contained in the company's policies. (Pl.'s Compl. at 11.) *See Decker,* 947 P.2d at 939. Paragraphs 8.2 through 8.4 of Atsepoyi's complaint state Tandy promulgated written and oral policies and procedures regarding equal opportunity and employee discharges. The complaint also asserts Tandy should have reasonably expected its employees to rely on the employer's statements. (Pl.'s Compl. at 11.) In light of the similarities between Atsepoyi's claim and the claim present in *Decker,* I deny the motion to dismiss the breach of the covenant of good faith claim.

### C. *Outrageous Conduct and Intentional Infliction of Emotional Distress.*

Atsepoyi's sixth claim for relief is for outrageous conduct, and his eighth claim is for intentional infliction of emotional distress. First, Tandy argues these two claims are synonymous and it need only address the sixth claim. Second, Tandy argues I should dismiss the outrageous conduct claim because Atsepoyi fails to allege facts sufficient for its support.

Tandy relies on *Price v. Federal Express Co.,* 660 F.Supp 1388 (D.Colo. 1987) in support of its argument that the eighth claim is superfluous. In *Price,* I noted the outrageous conduct tort is simply an updated term for the intentional infliction of mental suffering tort. *Id.* at 1394. I acknowledged that instead of comprising two separate torts, a plaintiff alleging one or both claims is actually trying to recover on a theory of "intentional infliction of emotional distress [by extreme and outrageous conduct]." *Id.* at 1395. Thus,

Tandy's statement, "[i]n Colorado, claims for intentional infliction of emotional distress and outrageous conduct are one and the same," (Def.'s Mot. Dismiss at 6), is correct, and I consolidate the sixth and eighth claims.

 The law applicable to Tandy's motion to dismiss the outrageous conduct claim may be found in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970) and in cases such as *Gwin v. Chesrown Chevrolet*, 931 P.2d 466 (Colo.App.1996) and *Wing v. JMB Property Management Corp.* 714 P.2d 916 (Colo.App.1985). In *Price*, I applied *Rugg* and articulated a two-part test for determining whether a claim for outrageous conduct can survive a motion to dismiss: (1) Plaintiff must demonstrate defendant's conduct was so outrageous in character and extreme in degree that it went beyond all possible bounds of decency, and people in a civilized society would regard such behavior as atrocious and intolerable; and (2) the court must determine whether reasonable men could not disagree on the outrageous conduct issue. *Price*, 660 F.Supp. at 1396. If reasonable men could not find defendant's conduct was outrageous, beyond a reasonable doubt, then the court should not allow the issue to proceed to the jury. *Id.*

▪ Applying this test, Atsepoyi's sixth claim alleges sufficient facts to withstand a motion to dismiss. As to the first prong, Tandy correctly argues the mere discharge of an employee, without more, does not support a claim for outrageous conduct. However, according to the complaint, Tandy did not merely discharge Atsepoyi. (Def.'s Mot. Dismiss at 7.) Unlike the cases cited by Tandy, here Atsepoyi bases his claim on the type of invidious discrimination and denigrating employer behavior that successful plaintiffs have used in outrageous conduct actions. For instance, Atsepoyi asserts Tandy's behavior resembled the employers' conduct in *Gwin* and *Wing* where the courts found defendants' discriminatory, humiliating, and harassing behavior, which culminated in the employees' dismissals, rose to the level of outrageous conduct. *See Gwin* 931 P.2d at 466; *Wing* 714 P.2d at 916. Even *Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo.App. 1996) which Tandy cites in support of its motion, acknowledges, "an action in tort may lie when an employer, intending to cause emotional distress, fires an employee in a manner specifically calculated to cause emotional distress." According to Plaintiff's complaint, this is exactly what Tandy did when it revoked his leave of absence and then constructively terminated him. (Pl.'s Compl. at 6.) Accepting the allegations in the complaint as true, ordinary citizens would find Tandy's discriminatory behavior atrocious and intolerable. Thus, the complaint satisfies the *Price* test's first prong.

In addition, Atsepoyi satisfies the second prong because average men could find, beyond a reasonable doubt, that Tandy's alleged racist remarks and discriminatory behavior would arouse an ordinary community member's anger, and lead him to exclaim "Outrageous!." *See Gard v. Teletronics Pacing Systems, Inc.*, 859 F.Supp. 1349, 1350 (D.Colo.1994). Tandy is incorrect in claiming Atsepoyi "does not allege any specific 'course of conduct' 'so extreme and outrageous as to exceed the bounds of decency which prevail in a civilized society.'" (Def.'s Mot. Dismiss at 8.) The complaint asserts a Tandy employee referred to blacks as "niggers" and "thieves," and his employer permitted such conduct. (Pl.'s Compl. at 4.) Atsepoyi also claims Tandy intentionally allowed and created a hostile and humiliating work environment through specific discriminatory practices such as allowing whites, and not blacks, to use company restrooms. (Pl.'s Compl. at 4.) Drawing all reasonable inferences in favor of Atsepoyi, the sixth claim alleges sufficient facts to survive dismissal. *See Price*, 660 F.Supp. at 1389.

### D. Breach of Contract. Promissory Estoppel, Wrongful Discharge.

 The third claim is for breach of contract, the fourth for promissory estop-

pel and the seventh for wrongful discharge. Tandy argues the breach of contract claim must fail because Atsepoyi does not articulate which of his employer's policies and procedures created an express contract. (Def's Mot. Dismiss at 10.) I disagree. The complaint states the employer's "handbooks and/or personnel manuals," delineating the company's practices, duties and commitments regarding equal opportunity and termination formed an express contract between the two parties. (Pl.'s Compl. at 9–10.) Atsepoyi further claims his decision to enter into and to continue to work for Tandy was the consideration for the agreement. (*Id.* at 10.) I find the complaint alleges Tandy's oral and written statements resulted in an express contract. Because the Colorado Supreme Court recognizes such contract formations, I deny the motion to dismiss the third claim. *See Decker,* 947 P.2d at 939.

■ Tandy seeks dismissal of the promissory estoppel claim, asserting (1) Atsepoyi has already alleged breach of an express contract and therefore cannot assert promissory estoppel as well; and (2) even if he could assert a claim under promissory estoppel, there can be no estoppel as a matter of law if the plaintiff was not justified in his reliance. (Def's Mot. Dismiss at 9–10.) Tandy does not cite any sources supporting its first contention, and indeed, Colorado case law is to the contrary. In *Continental Air Lines Inc. v. Keenan,* 731 P.2d 708, 710 (Colo. 1987) for example, the court noted if a plaintiff fails on an express contract claim, he may try to prevail using promissory estoppel. Justice Vollack articulated the three necessary criteria for such promissory estoppel claims where the employee supposedly relied on termination procedures contained in an employment manual: (1) A plaintiff must show the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures; (2) the employee reasonably relied on the termination procedures to his detriment; and

(3) injustice can be avoided only by enforcement of the termination procedures. *Id.* Because the complaint alleges all three elements necessary for asserting a promissory estoppel claim, (Pl.'s Compl. at 11–12), Defendant's first argument for dismissal fails.

■ Tandy's second argument, that Atsepoyi did not justifiably rely on its written and oral policies, rests on *Nelson v. Elway,* 908 P.2d 102, 110 (Colo.1995). According to *Elway,* whether a plaintiff justifiably relied on a defendant's promise is an issue of law for the trial court. Although Tandy's point is correct, it does not warrant dismissing plaintiff's fourth claim. Federal Rule of Civil Procedure 12(b)(6) precludes dismissal because Tandy does not show Plaintiff lacks facts supporting his claim entitling him to relief. *See Yoder v. Honeywell Inc.,* 104 F.3d 1215, 1224 (10th Cir.1997). Instead, Defendant makes the bare assertion Plaintiff was not justified in his reliance. (Def.'s Mot. Dismiss at 10.) Not only is Tandy's conclusory statement inadequate for dismissal, but cases such as Decker show Atsepoyi may prove he justifiably relied on his employee manual. *Decker,* 947 P.2d at 939.

■ Finally, I noted in *Johnson,* a plaintiff does not have to "identify his legal theory and the facts which support the claim to relief under that theory." *Johnson II,* 898 F.Supp. at 765. Thus, Atsepoyi's promissory estoppel claim is sufficiently drawn because it provides a short plain statement giving Tandy fair notice of the claim and the grounds upon which it rests. *Id.* For the above reasons, I do not dismiss the promissory estoppel claim.

■ Tandy asserts I should dismiss Atsepoyi's seventh claim for wrongful discharge because he fails to demonstrate the at-will employment doctrine does not apply to him. (Def.'s Mot. Dismiss at 11.) However, as already discussed, under *Keenan* and *Decker* the plaintiff may introduce facts showing he was not an at will employee. *Keenan,* 731 P.2d at 713; *Decker,*

947 P.2d 937. Consequently, I deny Tandy's motion to dismiss the seventh claim.

### E. *Negligent Infliction of Emotional Distress.*

The ninth claim is for negligent infliction of emotional distress. Tandy asks me to dismiss this claim because Atsepoyi does not allege his employer subjected him to an unreasonable risk of bodily harm placing him within the "zone of danger." (Def.'s Mot. Dismiss at 11.) Defendant correctly relies on the "zone of danger" rule discussed in *Card v. Blakeslee*, 937 P.2d 846 (Colo.App.1996). According to *Card*, if the plaintiff is not subject to a direct threat of harm or an unreasonable risk of bodily harm, then he is not within the "zone of danger," and therefore, cannot recover under this claim. *Id.* at 849. Similarly, the Colorado Supreme Court noted, "[w]e have never recognized a cause of action for emotional distress grounded in negligence without proof that the plaintiff sustained a physical injury or was in the 'zone of danger.'" *Culpepper v. Pearl St. Bldg. Inc.*, 877 P.2d 877, 880 (Colo. 1994).

Contrary to Atsepoyi's response, the harms he allegedly suffered do not, "[b]y definition place him within the 'zone of danger.'" (Pl.'s Resp. at 19.) Moreover, Plaintiff is mistaken when he states *Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978) and *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) support his ninth claim. In reality, both of these cases illustrate Atsepoyi's supposed injuries of being "physically distraught," sustaining "shock to his nervous system" and suffering "severe emotional distress," are inadequate for a negligent infliction of emotional distress claim. (Pl.'s Compl. at 16.) For instance, the United States Supreme Court asserted the "zone of danger" test limits recovery to plaintiffs who sustain a physical impact resulting from defendant's negligence, or who are placed within immediate risk of physical harm by that conduct. *Consolidated Rail Corp.*, 512 U.S. at 547, 114 S.Ct. 2396. Likewise, the courts in *Towns*, and *Culpepper* held, to have a cause of action under negligent infliction of emotional distress, plaintiff has to allege, at a minimum, he "suffered emotional distress which resulted in serious physical manifestations or mental illness." *Towns*, 579 P.2d at 1163; *Culpepper*, 877 P.2d at 880. While there is no precise definition of what constitutes a "serious physical manifestation or mental illness," courts have found generalized symptoms such as headaches, insomnia, crying spells, vomiting and diarrhea are insufficient. *See, e.g., Hernandez v. McDonald's Corp.*, 975 F.Supp. 1418, 1428 (D.Kan.1997); *Schweitzer–Reschke v. Avnet, Inc.*, 874 F.Supp. 1187, 1196 (D.Kan.1995). Because the complaint fails to state the necessary allegations to support a claim for negligent infliction of emotional distress, I grant the motion to dismiss the ninth claim.

### V. *Conclusion*

I DENY the motion to dismiss insofar as it seeks dismissal of claims three, four, five and six, GRANT the motion insofar as it seeks dismissal of the ninth claim for negligent infliction of emotional distress, and CONSOLIDATE the eighth claim for intentional infliction of emotional distress with the sixth claim for outrageous conduct.