**Mark SHEPHERD, Plaintiff,**

v.

**UNITED STATES OLYMPIC COMMITTEE, a corporation; and International Olympic Committee, a corporation, Defendants.**

**No. CIV.A.99–K–2077.**

United States District Court,
D. Colorado.

April 20, 2000.

Countess Pease Jeffries, Jeffries Advocates Law Offices, Costa Mesa, CA, for Plaintiff.

Raymond M. Deeny, Nancy Dawn Webber, Edward John Butler, Sherman & Howard, John William Cook, Virginia S. Morgan, Hogan & Hartson, LLP, Colorado Springs, James R. Asperger, Peter J. Shakow, O'Melveny & Myers, LLP, Los Angeles, CA, Susan Bernhardt, Cortez Macaulay Bernhardt & Scheutze, LLC, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Mark E. Shepherd, an Olympic Class Athlete with Disabilities, has been an employee of the Defendant United States Olympic Committee ("USOC") since September 6, 1994. He asserts he was hired pursuant to a written employment contract to which he was induced to enter by USOC's representation that he would be able to compete as a wheelchair basketball athlete as part of the duties of his position.

Shepherd sues USOC and the International Olympic Committee ("IOC"), asserting violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794 (" § 504"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. He also brings claims pursuant to the Colorado Anti–Discrimination

Act (CADA), Colo.Rev.Stat. § 24–34–301 et seq., as well as other state claims under Colorado common law. Shepherd's twenty-three claims consist of those in which he asserts disability discrimination or employment-related claims and those in which he asserts discrimination against him as a disabled athlete in USOC's athlete programs.[1]

Pending are IOC's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) and Fed.R.Civ.P. 12(b)(5) and USOC's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) or in the Alternative for Summary Judgment Pursuant to Fed.R.Civ.P. 56(c), and Motion to Strike Pursuant to Fed.R.Civ.P. 12(b).

## I. Applicable Legal Standards.

"The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir.1998). When a district court rules on a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. Id.

"[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1359 (10th Cir.1989). In considering whether dismissal is proper under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir.1999). Only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims which would entitle him to relief, should a Rule 12(b)(6) motion be granted. Id.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Simms v. Oklahoma ex rel. Dep't Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, —— U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Id. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir.1997).

---

1. The athlete program claims allege various USOC training and incentive programs are either unavailable or underfunded with respect to disabled athletes. These programs include the Resident Athlete Program, the Elite Athlete Medical Insurance Program, the Elite Athlete Tuition Assistance Program, the Drug Control Program, the Coach Development Program, the Community Olympic Program, Training Programs for the 2000 and 2002 Olympic competitions, Funding Programs for the Disabled Sports Organizations, the Operation Gold Monies Program, the Medal Stipend Program, Long Term Planning for the National Paralympic Committee, Marketing Programs with Disabled Sports Organizations, the Job Opportunity Program, and programs which provide uniforms, sundries and commemorative items to athletes.

## II. *Merits.*

### A. *IOC's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) and Fed. R.Civ.P. 12(b)(5).*

IOC, an international non-profit association, based in Lausanne, Switzerland, seeks dismissal of the Complaint against it under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(5) for insufficiency of service of process. Although Shepherd is not now nor has he ever been an employee of IOC, the Complaint asserts a number of employment-related claims against IOC, based on the allegation that USOC was "an agent and subcontractor to the [IOC], subject to the management and supervision of the IOC." (Compl.¶ 15, 229.) In addition to the numerous other claims asserted against both Defendants, the Twenty Second Claim for Principal Agent Liability—Negligent Supervision, (Compl.¶ 228–234), is asserted against IOC only.

### 1. *Personal Jurisdiction.*

IOC argues the exercise of jurisdiction would violate Colorado's long-arm statute because IOC does not have "minimum contacts" with Colorado and did not "purposely avail" itself of Colorado laws. I agree.

■ A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir.1984). Before trial, a plaintiff need only make a prima facie showing of jurisdiction. All disputes of fact are to be construed in a light most favorable to the plaintiff. *Id.*

The exercise of personal jurisdiction over a non-resident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements. *Doe v. National Medical Services,* 974 F.2d 143, 145 (10th Cir.1992). Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause. *Day v. Snowmass Stables, Inc.,* 810 F.Supp. 289, 291 (D.Colo.1993). Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant. Under the due process clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

#### a. *General Jurisdiction*

Under general jurisdiction, a nonresident defendant may be subject to a state's jurisdiction even where the alleged injury is unrelated to the defendant's contacts with the forum state. If a defendant's contacts with a state are strong enough, the state may assert jurisdiction over a defendant on any matter, whether or not it arises out of the defendant's contacts with the state. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ For general jurisdiction, a defendant's contacts with a state must be greater than those required for specific jurisdiction. *Day,* 810 F.Supp. at 292. General jurisdiction is appropriate only when a defendant has "continuous and systematic" general business contacts with the forum state, *Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868, so that the defendant could reasonably anticipate being haled into court in that forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Here, IOC's contacts with the State of Colorado are insufficient to support general jurisdiction. It is not incorporated in Colorado, and neither conducts business nor has qualified to do so in Colorado. It has no subsidiaries incorporated or qualified to conduct business in Colorado, nor do any of its officers or employees reside in Colorado. It maintains no bank account, telephone listing, or mailing address in Colorado, nor does it pay taxes here.

Shepherd's reliance on *Behagen*, 744 F.2d 731, is misplaced. There, the plaintiff sued the Federal Internationale de Basketball Amateur (FIBA), the international association governing amateur basketball in its member countries and its American member, the Amateur Basketball Association of the United States of America (ABA/USA). FIBA moved to dismiss for lack of personal jurisdiction on the grounds, *inter alia*, that it had no office or assets in Colorado, and had committed no acts in the United States. The Tenth Circuit held the evidence produced by Behagen constituted a prima facie case showing FIBA maintained continuous and substantial activity in Colorado through the action taken on behalf of its constituent, ABA/USA. *Id.* at 734. That evidence included the fact that ABA/USA was the American member of FIBA and according to the ABA/USA Handbook was required to "adhere to the regulations and policies set forth by FIBA" and to "carry out the responsibilities of" FIBA. *Id.* Viewed most favorably to the plaintiff, the Tenth Circuit found the record reflected "FIBA is its members, and that it governs internationally related amateur basketball through its member organization in each country." *Id.*

Shepherd attempts to analogize the IOC to FIBA, citing the description of IOC as the "umbrella organization of the Olympic Movement whose primary responsibility is the regular staging of the summer and winter Olympic Games." (Pl. Br. Opp'n

IOC's Mot. to Dismiss, Ex. 1.) He also cites the Olympic Charter to the effect that IOC is the "supreme authority of the Olympic movement" and "[a]ny person or organization belonging in any capacity whatsoever to Olympic Movement is bound by the Olympic Charter and shall abide by the decisions of the IOC," (*Id.*, Ex. 2). In addition, the Charter provides under the "Mission and Roles of the [National Olympic Committees]" that they are to "commit themselves to taking action against any form of discrimination and violence in sport," (*Id.*, Ex. 4).

Shepherd argues, as in *Behagen*, here the IOC requires the statutes of the USOC be in accordance with the Olympic Charter, if there is a contradiction between the USOC's statute and the Olympic Charter, the latter will take precedence, changes to the USOC's statutes must be approved by the IOC, and the collection of funds must be accomplished in accordance with the Olympic Charter, (*id.*, Ex. 4). In addition, Shepherd asserts, 93% of the marketing revenue generated by IOC is distributed to the National Olympic Committees to help defray administrative costs and this act establishes a level of contact and relationship between the IOC and USOC beyond that of FIBA and the ABA. Based on the above, Shepherd concludes: "IOC maintains continuous and substantial activities in Colorado through its actions taken on its behalf by the USOC and that Colorado therefore has general jurisdiction over IOC." (*Id.* at 8.) He does not, however, specify any action USOC has taken on behalf of IOC.

The fact that IOC requires USOC to act in accordance with the Olympic Charter or that USOC benefits from its relationship with the IOC is not sufficient to establish continuous and substantial activities in Colorado. This situation is distinguishable from *Behagen*, where FIBA's member organization in the USA, ABA/USA, was charged by FIBA with the responsibility

for carrying out FIBA's business of sanctioning FIBA competitions and determining player eligibility. *Behagen,* 744 F.2d at 734. The underlying causes of action in that case were based upon FIBA's eligibility determinations, the responsibility that ABA/USA carried out on FIBA's behalf. Here, however, Shepherd offers no suggestion that the IOC benefits from the USOC's actions in Colorado nor makes any specific showing of how USOC has acted on IOC's behalf.

In addition, here, unlike in *Behagen,* USOC is not a member of IOC, whose members are individual persons tasked with representing IOC in their own countries. Furthermore, Behagen sued FIBA because of an action taken by FIBA itself, denying his second reinstatement to amateur status. Here, however, Shepherd submits no evidence to suggest IOC took part in any of the decisions affecting Shepherd's employment status which give rise to this action.

■ The Complaint alleges USOC was, at all relevant times, the IOC's "agent and subcontractor, subject to the management and supervision of the IOC." (Compl.¶ 15.) The contacts of an agent may generally be imputed to the principal if those contacts are made within the scope of the agent's employment. *Taylor v. Phelan,* 912 F.2d 429, 433 (10th Cir.1990). An agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Kuenzle v. HTM Sport–Und Freizeitgerate, AG,* 102 F.3d 453, 459 (10th Cir. 1996). Such relationship cannot be presumed but must be clearly demonstrated. *Id.*

Shepherd bears the burden of establishing personal jurisdiction over IOC and thus of making at least a prima facie showing that an agency relationship exists. *Be-*

*hagen,* 744 F.2d at 733; *Kuenzle,* 102 F.3d at 459 (holding defendant, a foreign manufacturer, was not subject to the personal jurisdiction of a Wyoming court because the plaintiff failed to introduce sufficient evidence to establish an agency relationship between the defendant and its U.S. distributor). As already stated, unlike in *Behagen,* 744 F.2d at 734, Shepherd has made no showing that USOC functions for IOC in the United States. USOC's supporting declaration of Marianne Chappuis, an employee in the legal department of IOC, states, to the contrary, USOC has no authority to sign contracts for or enter agreements on behalf of IOC nor can IOC control the hiring, firing, promotion or disciplining of USOC employees such as Shepherd, nor did it exercise day-to-day supervisory responsibility over USOC or its employment practices. (Br. Supp. IOC Mot. to Dismiss, Ex. ¶¶ 7, 10.)

I conclude Shepherd has not made a prima facie showing that IOC maintains continuous and substantial activity in Colorado through the unspecific actions allegedly taken on its behalf by USOC nor through the unsubstantiated allegation that USOC was the agent of IOC.

b. *Specific Jurisdiction*

■ When pervasive contacts to assert a finding of general personal jurisdiction are lacking, specific jurisdiction may be nevertheless be asserted if a defendant has "purposefully directed" its activities toward the forum state, and if the lawsuit is based upon injuries that "arise out of" or "relate to" the defendant's contacts with the state. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. Shepherd argues IOC purposefully directed its activities at residents of Colorado by requiring USOC to abide by the Olympic Charter and by providing funding for administrative costs. The purposeful availment requirement is not satisfied by "attenuated contacts." *Id.* at 475, 105 S.Ct. 2174. Shepherd has not

made a prima facie showing that these contacts are sufficient to be considered purposeful availment. Moreover, the second requirement, that the litigation arises out of the defendant's activity in the forum state, is not satisfied.

The two types of IOC activity alleged are requiring USOC's adherence to the Olympic Charter, and providing money for the USOC's administrative costs. Shepherd argues his injuries are related to the discrimination to which USOC subjected him while USOC operated in Colorado as a result of his employment status with USOC under the ADA and against him as an Olympic class athlete under the Rehabilitation Act. (Compl.¶ 23.) As discussed, however, he does not suggest IOC was involved in any of the employment decisions out of which his cause of action arises. Moreover, USOC's minimum contacts with Colorado are insufficient to impose personal jurisdiction on IOC. *See Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1118 (6th Cir. 1994) (holding personal jurisdiction did not exist over the London-based International Amateur Athletic Federation (IAAF) despite the fact that its member organization in the USA had minimum contacts with Ohio where the plaintiff's contract claim did not arise out of IAAF's contacts with Ohio); *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273–74 (6th Cir.1998) (holding a plaintiff must provide sufficient evidence for the court to conclude a holding company has been brought into court for something it has done, rather than for something its subsidiary has done).

Second, although the Olympic Charter calls on National Olympic Committees such as USOC, to oppose discrimination and violence in sport, Shepherd's alleged injuries do not arise from the imposition of the Charter on the USOC. Nor do his claims stem from the IOC's provision of funding for administrative costs. Thus, Shepherd's alleged injuries do not "arise out of" or "relate to" either of these alleged contacts of IOC with Colorado. I find IOC did not purposely direct its activities toward Colorado, and the exercise of specific jurisdiction over it on this basis is improper.

Because Shepherd has not made a prima facie showing that IOC has sufficient "minimum contacts" with the state of Colorado to warrant the exercise of personal jurisdiction over IOC, I do not reach the issue of whether the exercise of such jurisdiction is so unreasonable as to violate "traditional notions of fair play and substantial justice." *See OMI Holdings*, 149 F.3d at 1091. For the aforesaid reasons, I grant IOC's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. I do not reach the issue of sufficiency of service on IOC.

B. *USOC's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) or in the Alternative for Summary Judgment Pursuant to Fed.R.Civ.P. 56(c), and Motion to Strike Pursuant to Fed.R.Civ.P. 12(b).*

1. *Exhaustion of Remedies Pursuant to 42 U.S.C. § 2000e–5 (Claims 1 through 3).*

USOC seeks dismissal of the first, second and third claims for Failure to Make Reasonable Accommodation, Employment Discrimination, and Retaliation and Coercion under Title I of the ADA. It asserts Shepherd has not exhausted his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue letter from that agency. The ADA utilizes the procedural requirements established under Title VII. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5 by reference). USOC argues the EEOC prematurely issued a right-to-sue letter to Plaintiff in violation of Section 2000e–5(f)(1) of Title VII, which requires

the EEOC to investigate the charge for at least 180 days before issuing a right to sue notice.[2]

Shepherd filed his discrimination charge on June 10, 1999. (USOC Mot. to Dismiss, Ex. A.) He received a right-to-sue notice on July 28, 1999. (Compl.¶ 4.) That notice states it was issued at Shepherd's request. (Pl.'s Br. Opp'n USOC Mot. to Dismiss, Ex. C.) The EEOC thus processed his charge for approximately 48 days, an amount of time considerably less than the 180–day period mandated under the statute. Shepherd filed this lawsuit on October 26, 1999. USOC asserts because the first, second and third claims are based on this invalid right-to-sue notice, they must be dismissed without prejudice to allow the EEOC to complete the investigation mandated by the statute, following which Shep-

herd may file a new complaint, if appropriate.

In support of its position, USOC cites *Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1348 (D.C.Cir.1999), which held 42 U.S.C. § 2000e–5(b) mandates the EEOC to investigate every charge.[3] Thus, a right-to-sue notice issued before the expiration of the 180–day period is invalid and the resultant lawsuit, untimely. *Id.* USOC also cites my decision in *Mills v. Jefferson Bank East,* finding the EEOC's regulation[4] permitting a right to sue notice before the expiration of the 180–day period invalid as " 'inconsistent with an obvious congressional intent,' " 559 F.Supp. 34, 35 (D.Colo.1983) (Kane, J.) (quoting *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94, 94 S.Ct. 334, 38 L.Ed.2d 287(1973)).[5]

**2.** Section 2000e–5(f)(1) provides in relevant part:

> .... If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this subsection, whichever is later, the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice....
> 42 U.S.C. § 2000e–5(f)(1).

**3.** Section 2000e–5(b) states the Commission "shall" investigate the charge and "shall" make a reasonable cause determination "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e–5(b).

**4.** The relevant regulation, entitled "Notice of right to sue: Procedure and authority" states:

> (2) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission may issue such notice as described in § 1601.28(3) with copies to all parties, at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided that the District Director, the Area Director, the Director of the Office of Field Services or the Director of the Office of Systemic Programs has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.
> 29 C.F.R. § 1601.28(2) (1999).

**5.** *See also, Robinson v. Red Rose Communications, Inc.,* No. CIV.A. 97–CV–6497, 1998 WL 221028 (E.D.Pa. May 5, 1998); *Montoya v. Valencia County,* 872 F.Supp. 904 (D.N.M. 1994); *Henschke v. New York Hosp.—Cornell Med. Ctr.,* 821 F.Supp. 166 (S.D.N.Y.1993); *People of State of New York v. Holiday Inns, Inc.,* 656 F.Supp. 675 (W.D.N.Y.1984); *Spencer v. Banco Real, S.A.,* 87 F.R.D. 739 (S.D.N.Y. 1980); *Hiduchenko v. Minneapolis Med. and Diagnostic Ctr. Ltd.,* 467 F.Supp. 103 (D.Minn.1979); *Loney v. Carr–Lowrey Glass Co.,* 458 F.Supp. 1080 (D.Md.1978) (all dismissing Title VII suits for failure to state a

In opposition, Shepherd cites cases, including *Connor v. WTI,* 67 F.Supp.2d 690, 696 (S.D.Tex.1999), which have held a person may sue upon the issuance of a right to sue letter by the EEOC even if the 180 day period has not expired.[6] Shepherd also cites *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), holding the requirement of filing a timely charge with the EEOC is not jurisdictional and is subject to waiver, estoppel and equitable tolling. He points out the holding in *Mills,* 559 F.Supp. at 35, that this court lacked jurisdiction to hear a claim when the EEOC issued a right to sue letter before the expiration of the 180 day period is inconsistent with *Zipes.* Moreover, *Martini,* 178 F.3d at 1348, acknowledged the issue is not jurisdictional and gave consideration to equitable factors. Shepherd argues, even if I were to apply *Martini,* the USOC has waived its right to protest the right to sue letter, is estopped from asserting such right, and is barred from doing so by the doctrine of laches.

■ The Tenth Circuit has not addressed the issue of whether a Title VII or ADA lawsuit may be filed following the EEOC's premature issuance of a right-to-sue letter. Based on the reasoning in *Martini* and that in *Mills,* however, I find Shepherd's claims, filed less than 180 days after filing charges with the EEOC violates the 180–day waiting period under §§ 2000e–5(b) and 2000e–5(f)(1). I also agree with *Martini* in its invalidation of

claim because the EEOC issued a right-to-sue notice prior to the expiration of the 180–day statutory period).

6. *See also, Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1061 (11th Cir.1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984); *Saulsbury v. Wismer and Becker, Inc.,* 644 F.2d 1251, 1257 (9th Cir.1980); *Bryant v. California Brewers Ass'n,* 585 F.2d 421, 425 (9th Cir.1978), vacated and remanded on other grounds, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Cattell v. Bob Frensley Ford,* 505 F.Supp. 617, 622 (M.D.Tenn.1980);

the EEOC's early right to sue regulation promulgated under 29 C.F.R. § 1601.28(a)(2) (1999) based on the relevant legislative history.

Shepherd correctly states the failure to exhaust remedies is subject to waiver, estoppel and laches. He has not, however, discharged his burden to establish any of these affirmative defenses. Notably, on the day after the early right-to-sue notice was issued, USOC's counsel sent a letter to the EEOC objecting to the termination of the investigation and advising the EEOC that USOC would file a motion to dismiss based on failure to exhaust administrative remedies. (USOC's Reply, Ex. 1.) In response, (*id.,* Ex.2), the EEOC refused USOC's request to return its position statement, but did not acknowledge or respond to EEOC's objection, despite the EEOC's power to revoke its right-to-sue notice. *See* 29 C.F.R. § 1601.19 and 1601.21 (1999).

I dismiss the first, second and third claims without prejudice for failure to exhaust administrative remedies.[7] Because the EEOC stopped processing Shepherd's charge 48 days after he filed it, he may file a new action including such claims only after the EEOC has attempted to resolve his charge for an additional 132 days. *See Martini,* 178 F.3d at 1348.

2. *Financial Assistance Requirement for Section 504 Athletic Program Claims Four through Seventeen*

■ USOC argues the claims under § 504 of the Rehabilitation Act fail as a

*Vanguard Justice Society v. Hughes,* 471 F.Supp. 670, 682; *Vera v. Bethlehem Steel Corp.,* 448 F.Supp. 610, 614 (M.D.Pa.1978); *Mead v. U.S. Fidelity & Guaranty Co.,* 442 F.Supp. 102, 108 (D.Minn.1977) (all permitting a private party to pursue claims in federal court upon the issuance of the right-to-sue letter by the EEOC, even if the 180–day investigation period has not expired).

7. Because I dismiss these claims without prejudice, I do not reach Defendants' other arguments for their dismissal.

matter of law because Shepherd cannot establish USOC or its individual athlete programs were the recipients of any federal financial assistance at the time during which USOC was allegedly discriminating against him. That statute pertinently provides:

> No otherwise qualified individual with a disability ...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a). To establish a prima facie case of discrimination under § 794, a plaintiff must prove: (1) he is handicapped as defined in the statute; (2) he is otherwise qualified to participate in the program or activity at issue; (3) he was excluded from the program or activity solely on the basis of his handicap; and (4) the program or activity receives federal financial assistance. *Smith v. Barton,* 914 F.2d 1330, 1338–39 (9th Cir.1990); *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998).

■ The application of § 504 is limited to entities that actually receive federal financial assistance because Congress sought to impose the act's coverage "as a form of contractual cost of the recipient's agreement to accept the federal funds." *United States Dep't of Transp. v. Paralyzed Veterans of America,* 477 U.S. 597, 605, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). Although the act does not define "financial assistance," the Tenth Circuit has defined it as the receipt of a "government subsidy." *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377, 1381 (10th Cir.1990) (citing *Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1208–09 (9th Cir.1984)). The test to determine whether a government transfer of money to an entity is a subsidy is whether Congress or the federal agency administering the program intended to subsidize the entity. *Id.*

Absent such intent, the fact that the entity has received a benefit from a transaction or transfer will not cause the transaction to be considered federal financial assistance. *Id.*

Shepherd alleges USOC was "the recipient of a federal grant when it received the property located at One Olympic Plaza, Colorado Springs, CO 80909, and other monies received by the federal government." (Compl.¶ 29.) Seeking summary judgment on the grounds that it has received neither grants nor other monies that amount to "Federal financial assistance" for the purposes of § 504, USOC submits the affidavit of its Chief Financial Officer. He states the only time USOC ever received federal funding was the result of a $10 million appropriation by Congress, received in 1980 and 1981 to compensate USOC for damages it sustained in supporting the boycott of the 1980 Olympics in Moscow. (USOC Br. Supp. Mot., Ex. E.)

Shepherd responds USOC's interpretation of "Federal financial assistance" is narrowly simplistic. He cites *Jacobson,,* which adopted the Department of Health and Human Services' definition of the term as:

> "[A]ny grant, loan, contract ... or any other arrangement by which the Department provides or otherwise makes available assistance in the form of: (1) Funds; (2) Services of Federal personnel; or (3) Real and personal property or any interest in or use of such property, including: (i) Transfers or leases of such property for less than fair market value or for reduced consideration ...."

742 F.2d at 1208 (quoting 45 C.F.R. § 84.3(h)(1983)). Shepherd argues USOC received federal financial assistance as defined in *Jacobson* in that it leased One Olympic Plaza, previously a United States Air Force Base, deeded to the City of Colorado Springs in 1978, for $1 per year.

(USOC Br. Supp. Mot., Ex. B3 ¶ 1.) He also maintains the $10 million received by USOC in 1981, (*id.*, Ex. E), was direct assistance in the form of funds as is USOC's having one director appointed by each branch of the Armed Forces and its usage of real property such as military markmanship ranges or military air transport for less than the fair market value.

■ USOC maintains Shepherd has not set forth specific facts showing there is a genuine issue for trial regarding whether it is the recipient of federal financial assistance sufficient to trigger § 504. Considering, however, the broad definition of "financial assistance" in *Jacobson*, cited with approval by the Tenth Circuit in *DeVargas*, USOC has not shown it is entitled to summary judgment as a matter of law. Shepherd should be allowed the benefit of discovery, particularly with reference to the issue of whether Congress or any federal agency, by providing direct or indirect financial assistance to USOC, has or had the requisite intent to subsidize it.

3. *Exhaustion of Administrative Remedies on Eighteenth and Nineteenth Claims.*

The Eighteenth Claim alleges USOC violated the Colorado Anti–Discrimination Act (CADA), Colo.Rev.Stat. § 24–34–402(a) (1999) by failing to provide reasonable accommodation to Shepherd which would allow him to perform the essential function of his position of advancing disabled sporting programs and policies. (Compl.¶¶ 195–203.) The Nineteenth Claim alleges USOC violated CADA by discriminating against Shepherd and harassing him on the basis of disability. (Comp.¶¶ 204–212.)

Defendants argue and Shepherd concedes he has not exhausted his administrative remedies with regard to these state claims by filing the requisite discrimination claim with the Colorado Civil Rights Commission and receiving a right-to-sue notice from the Colorado Civil Rights Division. *See* Colo.Rev.Stat. § 24–34–306(1), (14) (1999). Shepherd requests me to dismiss these claims without prejudice to his pursuing them after he has filed the discrimination charge as required.

CADA requires the filing of a discrimination charge within six months of the alleged discriminatory practice. Colo.Rev. Stat. § 24–34–403 (1999). Shepherd alleges he filed the discrimination charge with the EEOC within eighty days of the alleged discrimination. (Compl.¶ 3.) That charge was filed on June 10, 1999. (USOC Br. Supp. Mot., Ex. A.) Given these two facts, USOC asserts the discrimination claims are based on alleged acts which occurred between December 13, 1998 and June 10, 1999 and thus any future charge filed with the Colorado Civil Rights Commission based on such acts would be untimely. Considering, however, that these claims allege discrimination against Shepherd by USOC in his ongoing capacity as its employee, it is possible that the alleged conduct persists and the filing of such claim would not necessarily be barred. Accordingly, without commenting on the viability of any future CADA claims, I dismiss the Eighteenth and Nineteenth Claims without prejudice.

4. *Twentieth Claim for Breach of an Expressed [sic] Employment Contract.*

The Complaint alleges in September 1994, the parties entered into a written employment agreement. (Compl.¶ 14.) The Twentieth Claim asserts, when USOC hired Shepherd, it "verbally agreed" to allow him to remain "on the clock" while he participated in sporting events, (*Id.* ¶ 214), that agreement was later modified to the effect he would only "work half time during sporting events," (*id.* ¶ 216), and USOC has breached the modified contract, (*id.* ¶ 217 –219).

USOC argues the claim fails as a matter of law because the "alleged oral promise" lacks consideration and because it is too vague to be enforceable. In response, Shepherd correctly points out USOC has mistakenly interpreted "verbal" as "oral" and asserts he relies on a written employment agreement, (*see* Compl. ¶ 14). He attaches his affidavit, (Pl.'s Br. Opp'n USOC Mot.to Dismiss, Ex. D ¶ 5), stating, as an inducement to his accepting employment, USOC made "verbal representations" that he could be "on the clock" at sporting events in which he participated. USOC replies the only written document on which Shepherd could be relying as an employment agreement is the offer letter he received from the USOC in 1994 which contains no reference to an agreement that he could work "on the clock" while participating in sporting events.

■ The Complaint, though not a model of clarity, sufficiently asserts the existence and breach of a written employment contract. Moreover, Shepherd's affidavit raises specific facts showing there is a genuine issue for trial regarding the existence of adequate consideration.

In addition, USOC seeks to strike Shepherd's claim for punitive damages arising out of the alleged breach of employment contract, (Compl.¶ 219). Exemplary damages are only available in Colorado pursuant to statute. *Mortgage Finance, Inc. v. Podleski,* 742 P.2d 900, 902 (Colo.1987). The law of contracts does not seek to compel performance of a contract by punishing a breach, but rather to compensate the promisee for losses sustained as a result of a breach. *Id.* The law of torts, however, is premised upon legal duties imposed by law, breach of which can, in certain circumstances, justify the imposition of exemplary damages in order to punish the defendant and deter others from similar conduct in the future. *Id.* at 902–03.

■ Shepherd's reliance on *Flexisystems, Inc. v. American Standards Testing Bureau, Inc.* 847 P.2d 207, 209 (Colo.App. 1992) is misplaced in that there the court held the claim for punitive damages attached to the plaintiff's tort claim of conversion as opposed to its breach of contract claim. *See id.* Here, Shepherd has not asserted a tort claim. *See Decker v. Browning–Ferris Indus. of Colorado Inc.,* 931 P.2d 436, 446 (Colo.1997) (en banc) (vacating award of punitive damages on breach of contract claim where no tort claim was before trial court). At this time, I deny the motion insofar as it seeks dismissal of the Twentieth Claim. Pursuant to Fed.R.Civ.P. 12(f), but strike as immaterial the claim for punitive damages for alleged breach of contract.

5. *Twenty First Claim for Violation of Implied Covenant of Good Faith and Fair Dealing.*

USOC asserts I should dismiss this claim because Colorado courts have rejected claims for breach of the implied covenant of good faith and fair dealing in the employment setting. *See Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220, 222 (Colo.App.1988) (holding implied covenant of good faith and fair dealing found in some commercial contracts does not extend to at-will employment contracts). Citing *Atsepoyi v. Tandy Corporation,* 51 F.Supp.2d 1120, 1124 (D.Colo.1999) (Kane, J.), Shepherd argues this court has recognized such claim. In *Atsepoyi* and the case on which it relied, *Decker v. Browning–Ferris Industries of Colorado, Inc.,* 947 P.2d 937, 939 (Colo.1997), I recognized a claim for an implied breach of the covenant of good faith and fair dealing where the plaintiff alleges violation of an express covenant of good faith and fair dealing contained in the company's policies. That is not the situation here. As I did in *Donohue v. Unipac Service Corp.,* 847 F.Supp. 1530, 1535 (D.Colo.1994) (Kane,

J.), so here I follow the Colorado Court of Appeals in declining to accept a plaintiff's invitation to extend the implied covenant of good faith and fair dealing, to employment contracts. Accordingly, I dismiss the Twenty–First Claim with prejudice.

### 6. *Twenty–Second Claim for Negligent Supervision.*

USOC's motion to dismiss asserts this claim fails as a matter of law. In response, Shepherd notes USOC does not have standing to challenge the claim which is asserted against IOC only. In reply, USOC concedes this to be the case and presents no further argument in this regard. Accordingly, I deny USOC's motion insofar as it seeks dismissal of the Twenty–Second Claim.[8]

### 7. *Damages Claim.*

Shepherd asserts he is entitled to at least one million dollars in compensatory damages, one million dollars for pain and suffering, and ten million dollars in punitive damages. (Compl.¶¶ 35–37.) USOC seeks to strike these demands for damages as impertinent and scandalous pursuant to Fed.R.Civ.P. 12(f). It argues ADA's statutory damages limitation is $300,000, Shepherd cannot be compensated for damages for the same conduct under both ADA and the Rehabilitation Act, and even if attorney fees were awarded, total damages would not exceed even one million dollars.

USOC is correct regarding duplicative damages and capping based on statutory limits. A jury may, nevertheless, award damages on each claim in excess of the statutory limits, leaving the court to make the necessary adjustments. Moreover, the amount of compensatory and punitive damages which Shepherd may claim will depend on a determination of the facts. As

such, the motion to strike the damages claim is premature and I deny it.

### 8. *Twenty–Third Claim for Declaratory Relief.*

USOC seeks dismissal of the declaratory relief claim as duplicative, requesting no more than that to which Shepherd would be entitled under his ADA and Rehabilitation Act claims. Shepherd apparently concedes, stating he will seek leave to amend this cause of action to enjoin USOC from all further discriminatory practices.

 The purpose of the Declaratory Judgment Act was to prevent the accrual of avoidable damages. *Saum v. Widnall,* 912 F.Supp. 1384, 1394 (D.Colo.1996) (Kane, J.) Where the injury has already occurred and there is no threat of future harm, declaratory relief is inappropriate. *Id.* For this court to act upon the claim for declaratory relief as now plead would be nothing more than a gratuitous comment without any independent force or effect. I therefore grant the motion insofar as it seeks dismissal of this claim without prejudice.

### 9. *Request for Damages for Emotional Pain and Suffering.*

 Shepherd alleges he is entitled to an award of damages of at least one million dollars for emotional pain and suffering. (Compl.¶ 36.) USOC asserts such request is barred by the exclusivity provisions of the Colorado Workmen's Compensation Act, recovery under which is meant to be the exclusive remedy for workers covered by its provisions. *See Kelly v. Mile Hi Single Ply, Inc.,* 890 P.2d 1161, 1163 (Colo.1995). It cites no authority, however, for the proposition that the Colorado act precludes compensatory damages

---

**8.** The Twenty–Second Claim is effectively dismissed by virtue of my conclusion that per-

sonal jurisdiction over IOC does not exist.

for emotional pain and suffering under Title VII, 42 U.S.C. § 1981a(a)(1) or under the ADA to which Title VII extends the right to such damages, 42 U.S.C. § 1981a(1)(2). Nor do I find any. Accordingly, I deny the motion insofar as it seeks to dismiss the requests for damages for emotional pain and suffering.

### III. *Conclusion.*

For the aforesaid reasons, IT IS ORDERED THAT

(1) Defendant IOC's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is GRANTED and this case is DISMISSED against IOC with each party to pay his or its own costs;

(2) Defendant USOC's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), or in the Alternative for Summary Judgment Pursuant to Fed.R.Civ.P. 56(c), and Motion to Strike Pursuant to Fed.R.Civ.P. 56(c) is GRANTED insofar as it seeks to dismiss the Claims One, Two and Three without prejudice for failure to exhaust administrative remedies; DENIED insofar as it seeks dismissal of Claims Four through Seventeen; GRANTED insofar as it seeks to dismiss the Eighteenth and Nineteenth Claims without prejudice; DENIED insofar as it seeks dismissal of the Twentieth Claim; GRANTED insofar as it seeks to strike as immaterial the claim for punitive damages for alleged breach of contract; GRANTED insofar as it seeks dismissal of the Twenty–First Claim with prejudice; DENIED insofar as it seeks dismissal of the Twenty–Second Claim; GRANTED insofar as it seeks dismissal of the Twenty–Third Claim without prejudice; DENIED insofar as it seeks to dismiss the requests for damages for emotional pain and suffering.