**ENERGEX ENTERPRISES, INC., Plaintiff,**

v.

**ANTHONY DOORS, INC., d/b/a Anthony International, Anthony Doors, Anthony Doors, Inc., a/k/a Anthony Manufacturing Co., Inc., Defendant.**

No. CIV.A.02–K–397.

United States District Court, D. Colorado.

March 6, 2003.

James K. Kreutz, James K. Kreutz & Assoc., Greenwood Village, CO, for plaintiff.

Garry R. Appel, Appel & Lucas, P.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Energex Enterprises, Inc. ("Energex") asserts five claims against Defendant Anthony Doors, Inc. ("Anthony") arising from Anthony's alleged breach of the "Confidential Disclosure Agreement" entered into by the parties on or before February 29, 2000. Anthony moves to dismiss each of Energex's claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Having carefully considered the motion, the parties' memoranda of law and all applicable legal authorities, and being fully advised in the premises, I grant An-

thony's motion in part and deny it in part as stated below.

## Background

Based on Energex's allegations, it is a Colorado corporation and the sole distributor of the "Door Miser," a patented product designed to conserve energy for glass display doors, specifically refrigeration doors. Anthony is a California corporation that manufactures, sells and distributes refrigeration doors world-wide. Sometime before February 29, 2000, Energex and Anthony began discussing a potential business relationship in which Anthony would purchase the Door Miser and install it in its refrigeration doors. In connection with these discussions, Energex and Anthony entered into the "Confidential Disclosure Agreement" [hereinafter the "Agreement"], after which Anthony requested time to allow its engineering, sales and manufacturing personnel to analyze the Door Miser for possible incorporation in Anthony's products.

In June or July of 2000 Energex made a formal presentation to Anthony in an attempt to sell it the Door Miser for installation in its manufactured doors. During this presentation Energex disclosed certain confidential information and trade secrets regarding Energex and the Door Miser to Anthony. Following the presentation Anthony again requested time to analyze the Door Miser before making a determination about purchasing it. Energex granted Anthony's request but, with Anthony's knowledge, also entered into preliminary negotiations with Costco and other large outlets of refrigerated doors regarding their possible purchase of the Door Miser.

In approximately December, 2000, Anthony informed Energex it was no longer interested in purchasing the Door Miser or discussing a business relationship with Energex. Energex later discovered Anthony had developed the "Optimiser," a product believed to be the same or similar to the Door Miser, and was manufacturing and marketing this new product in direct competition with Energex's Door Miser. Energex alleges Anthony's manufacture and sale of the Optimiser utilizes confidential information and trade secrets disclosed to Anthony by Energex pursuant to the Agreement and breaches that Agreement in several respects. In addition to its breach of contract claim, Energex asserts claims for bad faith breach of contract, violation of the Uniform Trade Secrets Act, § 7–74–101 *et seq.*, unfair competition and misappropriation and wrongful interference with business opportunity.

## Standard of Review

In determining whether dismissal is proper under Rule 12(b)(6), I accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999); *Shepherd v. United States Olympic Comm.,* 94 F.Supp.2d 1136, 1139 (D.Colo.2000). I may also consider the Agreement, which is attached to Energex's complaint, in deciding Anthony's motion. *See Prager v. LaFaver,* 180 F.3d 1185, 1189 (10th Cir.1999). Dismissal under Rule 12(b)(6) is permitted only when it appears the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Sutton,* 173 F.3d at 1236; *Shepherd,* 94 F.Supp.2d at 1139. Under the Federal Rules, there is a "powerful presumption against rejecting pleadings for failure to state a claim." *Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999) (quotation omitted).

## Discussion

### A. Breach of Contract Claim

Although the Agreement between Energex and Anthony is titled "Confidential

Disclosure Agreement," it actually contains two distinct clauses-a non-disclosure clause and a non-competition clause. *See* Compl., Exh. A. Energex alleges in its first claim for relief that Anthony breached both aspects of the Agreement, first by developing, manufacturing and selling the Optimiser in violation of the Agreement's non-competition clause and second by utilizing and disclosing Energex's confidential information and trade secrets in violation of the Agreement's non-disclosure clause. In its motion to dismiss, Anthony challenges the sufficiency of Energex's breach of contract claim only with respect to the Agreement's non-competition clause. Accordingly, Energex's claim that Anthony breached the non-disclosure clause of the Agreement will proceed notwithstanding my decision on the remainder of Anthony's motion to dismiss.

Anthony argues Energex failed to state a claim for breach of the Agreement's non-competition clause because, as a matter of law: (1) the non-competition clause is void under C.R.S. § 8–2–113(2); (2) it is void because it is unreasonable; and/or (3) it is unenforceable as an unlawful extension of patent monopoly or a *per se* restraint of trade under section 1 of the Sherman Act. Each contention is examined in turn below.

(a) *C.R.S. § 8–2–113(2)*

■ C.R.S. § 8–2–113(2) states in relevant part:

Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:

(a) Any contract for the purchase and sale of a business or the assets of a business;

(b) Any contract for the protection of trade secrets;

. . . . .

On its face, this statute only applies to covenants not to compete in the employment context. Anthony argues it nonetheless applies to the Agreement based on case law applying the statute in some other settings. *See Gold Messenger, Inc. v. McGuay,* 937 P.2d 907, 909–11 (Colo.App. 1997) (assuming franchise/franchisor relationship is subject to § 8–2–113(2)); *Smith v. Sellers,* 747 P.2d 15, 16–17 (Colo.App. 1987) (independent contractor agreement); *Nutting v. RAM Southwest, Inc.,* 106 F.Supp.2d 1121, 1124 (D.Colo.2000) (distributor/manufacturer relationship). Each of these settings, however, either implicitly or explicitly involved situations in which, as in the employment context, the covenant in question limited the defendant's ability to make a living at its chosen trade. *See Nutting,* 106 F.Supp.2d at 1124–25 (applying C.R.S. § 8–2–113(2) to non-competition provision in manufacturer-distributor agreement based on finding that it limited defendants' ability to continue a significant portion of their business). There is no suggestion in the complaint or in Anthony's motion that the non-competition agreement between Energex and Anthony has any such effect on Anthony's ability to do business. Accordingly, I find no basis at this time for applying C.R.S. § 8–2–113(2) to the Agreement's non-competition clause.

■ Even if this were not the case, I would still reject Anthony's contention that the parties' non-competition agreement is void under the Colorado statute. As noted above, the statute provides it does not apply to "[a]ny contract for the protection of trade secrets." C.R.S. § 8–2–113(2)(b).[1]

1. Energex also argues the non-competition agreement falls within the statute's business

Under Colorado law, a trade secret is "any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7–74–102(4). Furthermore, to be a trade secret "the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner . . . ." *Id.* Such precautions must be more than normal business procedures. *Harvey Barnett, Inc. v. Shidler,* 143 F.Supp.2d 1247, 1252 (D.Colo. 2001).

The Agreement, both on its face and based on the context in which it was entered (as alleged in the complaint), is a "contract for the protection of trade secrets." The non-disclosure portion of the Agreement is expressly designed to prevent the disclosure of Energex's "Confidential Information," defined in the Agreement to include *"trade secrets, . . . and product, marketing and business strategies."* Compl., Exh. A (emphasis added). The non-disclosure provisions also restrict Anthony's disclosure of Confidential Information to employees having a "need to know," evidencing the parties' intention to protect Energex's trade secrets and other confidential information from unauthorized disclosure. The non-competition portion of the Agreement compliments these provisions by providing additional protection to Energex for having disclosed its trade secrets and other confidential information to Anthony.

Anthony does not dispute the Agreement was intended to protect Energex's Confidential Information, but argues none of this information qualifies as a "trade secret" because information regarding Energex's patented Door Miser product is a matter of public record. This argument assumes, however, that the only information covered by the Agreement is information disclosed in the publicly available Door Miser patent and patent file. As noted above, the definition of "Confidential Information" under the Agreement is not so limited.[2] Energex's allegation that it provided Anthony with "confidential information and trade secrets of Energex and their [sic] product, *i.e.,* the 'Door Miser,'" is also sufficient for current purposes to establish that the information actually disclosed under the Agreement encompassed more than public information regarding the patented Door Miser product.[3]

sales exception. *See* C.R.S. § 8–2–113(2)(a). The purpose of this exception is to protect the good will of the business being sold. *Nutting,* 106 F.Supp.2d at 1126. Consistent with this purpose, the exception by its terms applies only to contracts for the sale of a business as a whole or its assets. *See* C.R.S. § 8–2–113(2)(a). The non-competition agreement entered into by Energex and Anthony is not part of such a contract but rather is part of a contract that enabled Anthony to receive confidential information from Energex regarding it and its Door Miser product. *See* Compl., Exh. A. Accordingly, the parties' non-competiton agreement does not fall within the business sale exception to § 8–2–113(2)(a).

2. In addition, publicly available patent information presumably would not qualify as "Confidential Information" under the Agreement because the Agreement defines this term as "proprietary and confidential information that is not otherwise available," and specifically excludes information that is or becomes publicly available. Compl., Exh. A.

3. I also reject Anthony's contention throughout its motion that Energex failed to state one or more claims because it did not call out in the complaint the specific trade secrets and other confidential information that it alleges Anthony improperly disclosed and used. Energex's allegations are sufficient to put Anthony on fair notice of the claims against it. No more is required under the Federal Rules. *See, e.g., Johnson v. N.T.I.,* 898 F.Supp. 762, 765–66 (D.Colo.1995).

#### (c) *Reasonableness*

Under Colorado law, a non-competition agreement that is not subject to C.R.S. § 8–2–113(2) is still void if it is unreasonable in either duration or geographic scope. *See Nutting*, 106 F.Supp.2d at 1126–27. Anthony argues the Agreement's non-competition clause is unreasonable as a matter of law on both counts and is therefore not enforceable.

■ Whether a particular duration or geographic scope is "reasonable" in non-competition agreement depends on the facts of each case. *See id.* at 1127; *Zeff, Farrington & Associates, Inc. v. Farrington*, 168 Colo. 48, 449 P.2d 813, 814 (1969). To determine the reasonableness of a particular agreement, the trial court must first examine the circumstances of the contracting parties to determine whether a restrictive covenant is justified at all, and then examine the specific terms of the noncompetition clause to determine the reasonableness of their effect. *Management Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 766 (Colo.App.1988). The central concern in both determinations is whether the restrictive provision is necessary to safeguard the plaintiff's business. *See id.; see Nutting*, 106 F.Supp.2d at 1127 (making reasonableness determination based on evidence of whether noncompetition agreement was required to protect the benefitted party, its niche in the market or its product). Colorado courts applying this fact-driven test have enforced non-competition agreements with durations extending from six months to perpetuity and geographic scopes ranging from county to nation-wide. *See Nutting*, 106 F.Supp.2d at 1127 (summarizing cases). If the trial court finds a particular non-competition agreement unreasonable in either duration or scope, it also has discretion to modify the terms of the agreement to render it reasonable and enforceable. *See Gulick v. A. Robert Strawn*

*& Assocs., Inc.*, 477 P.2d 489, 493 (Colo. App.1970); *Whittenberg v. Williams*, 110 Colo. 418, 135 P.2d 228, 229 (1943).

■ The Agreement's non-competition clause extends for a period of ten years and prohibits Anthony from "engag[ing] in the business of or [acting as] a Distributor or Dealer for any company, person, or entity which manufactures, markets, or sells any product substantially similar to the Authorized Products of Energex Enterprises, Inc. . . . in all areas where any Authorized Products of Energex Enterprises, Inc. are manufactured or sold." *See* Compl., Exh. A. Whether this provision is reasonable in duration and geographic scope is a factual question to be determined based on facts that are not yet before the court. Accordingly, there is no basis at this time to find the Agreement's non-competition clause unreasonable under Colorado law and therefore void.

#### (d) *Unlawful extension of patent monopoly and per se restraint of trade*

■ Anthony also asserts the non-competition clause is unenforceable because, as a matter of law, it is an unlawful extension of a patent monopoly and a *per se* restraint of trade under section 1 of the Sherman Act. Both arguments ignore that the primary purpose of the non-competition clause and the Agreement as a whole, on the face of the Agreement itself, is the protection of Energex's trade secrets, not to extend a patent monopoly or restrain competition. Anthony's patent monopoly argument also assumes facts not present in the complaint, such as that the only information protected by and disclosed by Energex pursuant to the Agreement was public information regarding the Door Miser patent and that the term of the non-competition clause, ten years, exceeds the remaining term of the Door Miser patent. Anthony's restraint of trade argument also

assumes that any arms-length confidentiality agreement that requires a potential competitor to agree to a period of non-competition as a condition for obtaining access to a potential competitor's trade secrets is, as a matter of law, an illegal restraint of trade that voids the agreement. Anthony presents no direct legal support for such a proposition and the authority it does cite does not begin to extend this far. Thus, there is no merit to Anthony's contention that the non-competition clause is void and unenforceable on its face as an unlawful extension of patent monopoly and/or a *per se* restraint of trade under section 1 of the Sherman Act.

### B. Bad Faith Breach of Contract

 Energex's third claim for relief is for bad faith breach of contract. Colorado does not, however, recognize a tort claim predicated upon a breach of contract unless the conduct constituting the breach is itself tortious conduct. *See Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792 (Colo.App.1991); *William H. White Co. v. B & A Mfg. Co.*, 794 P.2d 1099, 1101 (Colo.App.1990). Energex does not dispute that it failed to plead any such conduct, but argues its bad faith claim should nonetheless survive based on Anthony's alleged breach of the implied covenant of good faith and fair dealing present in every contract. *See, e.g.*, C.R.S. § 4–1–203; *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995). Energex did not plead breach of this duty, however, and Colorado in any event has not recognized a tort claim for breach of implied covenant of good faith and fair dealing except in the insurance context. *Decker v. Browning–Ferris Industries of Colorado, Inc.*, 931 P.2d 436, 443–46 (Colo.1997). Thus, Ener-

gex's bad faith breach of contract claim fails to state a claim under Colorado law.

### C. Trade Secret Claims

 In its fourth and fifth claims for relief, Energex alleges Anthony misappropriated its trade secrets and thereby violated the Uniform Trade Secrets Act, C.R.S. § 7–74–101 *et. seq.*, and engaged in unfair competition. Anthony argues both claims must be dismissed because a patented product cannot constitute a trade secret and hence no misappropriation of trade secrets occurred. As noted above, however, Energex alleges it disclosed to Anthony "trade secrets of Energex and their product", *i.e.*, "Door Miser," Compl., ¶ 8; *see id.* ¶¶ 14, 22. These allegations, assumed to be true at this stage of the litigation, sufficiently allege that the information allegedly misappropriated by Anthony constituted trade secrets, rather than publicly available patent information regarding Energex's Door Miser product. Exactly what these alleged trade secrets were and whether they constitute trade secrets under Colorado law are questions of fact for subsequent determination.[4] *See Gold Messenger*, 937 P.2d at 911.

### D. Wrongful Interference with Business Opportunity

 In its second claim for relief, Energex alleges "wrongful interference with business opportunity," also known as tortious interference with prospective business advantage. In order to state this claim, Energex must allege that Anthony intentionally and improperly interfered with Energex's prospective business relations by inducing or otherwise causing a third person not to enter into or continue

---

4. In its response to Anthony's motion, Energex alleges it provided Anthony with confidential information regarding the Door Miser product and methods for selling and distribut-

ing the product, all of which could qualify as trade secrets under Colorado law if it was "secret and of value." *See* C.R.S. § 7–74–102(4); *Gold Messenger*, 937 P.2d at 911.

the prospective relation with Energex or by preventing Energex from acquiring or continuing the prospective relation. *See Amoco,* 908 P.2d at 500 (quoting Restatement (Second) of Torts, § 766B (1979)).

■ Although the complaint contains allegations stating these elements, Anthony asserts Energex's claim for tortious interference must nonetheless be dismissed based on the competitor's privilege to interfere with the prospective business advantage of its competitors. This privilege as stated in section 768(1) of the Restatement (Second) of Torts and adopted by the Colorado courts permits a competitor to interfere intentionally in another competitor's prospective business relations so long as the prospective relation concerns a matter involved in the competition, the competitor does not employ wrongful means, its action does not create or continue an unlawful restraint of trade and the competitor's purpose is at least in part to advance its interest in competing with the other. *See* Restatement, § 768(1); *Amoco,* 908 P.2d at 501–02; *Occusafe, Inc. v. EG&G Rocky Flats, Inc.,* 54 F.3d 618, 623 (10th Cir.1995) (applying Colorado law). Anthony asserts the competitor's privilege should be applied to dismiss Energex's tortious interference claim because Energex alleges Anthony is a competitor but fails to allege Anthony employed any "wrongful means" in interfering with Energex's prospective relations with companies interested in its Door Miser product.

■ Assuming *arguendo* that Energex must allege interference by "wrongful means" in order to state its claim,[5] I find

it has done so. The Colorado Supreme Court has looked to the comments to Restatement § 768(1)˙ and other courts' construction of the term to determine its meaning. *See Amoco,* 908 P.2d at 502 & n. 6. Comment e to the Restatement section states "predatory means . . . physical violence, fraud, civil suits and criminal prosecutions" are all "wrongful means" the uses of which are not condoned under the competitor's privilege. The Tenth Circuit had determined that the majority of courts considering this comment and Restatement § 768(1) hold "wrongful means" defeating the competitor's privilege is conduct that is itself capable of forming the basis for liability of the actor. *See DP–Tek, Inc. v. AT&T Global Info. Solutions Co.,* 100 F.3d 828, 834–35 (10th Cir.1996) (surveying authority to predict how Kansas Supreme Court would interpret term); *Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1507 (8th Cir.1992) (quoted with approval by Colorado Supreme Court in *Amoco,* 908 P.2d at 502 n. 6). Numerous courts have also recognized that a competitor's interference with another's prospective business relations through independently actionable conduct such as misappropriation of trade secrets or breach of a confidentiality agreement between the parties constitutes "wrongful conduct" defeating the competitor's privilege. *See, e.g., Labor Ready, Inc. v. Williams Staffing, LLC,* 149 F.Supp.2d 398, 411 (N.D.Ill.2001); *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171, 707 N.E.2d 853, 861 (1999); *SI Handling Sys. Inc. v. Heisley,* 658 F.Supp. 362, 374–75 (E.D.Pa.1986); *cf. DP–Tek,*

---

5. Anthony assumes this is the case but has not identified any Colorado precedent that speaks definitively to whether a competitor's privilege to engage in competition is simply not improper conduct giving rise to a claim to tortious interference with prospective business advantage or whether it is an affirmative defense to the claim to be pled and proved by the defendant. There is also no consensus on the point in other courts. *See* Restatement, § 768 cmt. a. The Colorado Jury Instructions treat the privilege as an affirmative defense but recognize some circumstances in which the burden of proof on the issue falls to the plaintiff. *See* CJI–Civ. 4th 24:1 n. 3; 24:6 & nn. 3, 5.

100 F.3d at 835–36 (no wrongful conduct by defendant when it was not a party to breached confidentiality agreement). As I have found Energex stated independent claims for both types of misconduct here, I also find it has adequately alleged that Anthony used wrongful means when it interfered with Energex's prospective business relations.

For the reasons stated above, I order as follows:

Anthony's Motion to Dismiss is GRANTED as to Energex's Third Claim for Relief (Bad Faith Breach) and this claim is hereby DISMISSED. Anthony's Motion to Dismiss is DENIED as to Energex's First, Second, Fourth and Fifth Claims.